## United States *v.* Crabb & Co. (No. 891).[1]

LEATHER CUT INTO SHAPE TO BE MANUFACTURED INTO ARTICLES.

The merchandise is cut from leather of the bovine species in a form suitable to be shaped and fitted upon a particular roller, and so adapted to its final use. It is governed accordingly by United States *v.* Ringk & Co. (3 Ct. Cust. Appls., 353; T. D. 32908), and is dutiable under paragraph 451, tariff act of 1909—United States *v.* Richards (1 Ct. Cust. Appls., 537; T. D. 31548) distinguished.

United States Court of Customs Appeals, November 14, 1912.

APPEAL from Board of United States General Appraisers, Abstract 27835 (T. D. 32302).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Charles D. Lawrence,* special attorney, on the brief), for the United States.

No appearance for the appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

This merchandise was imported at Newark, N. J., and invoiced as "cylinder leather, 6 pieces, 6 by 7 inches." It appears from the record, however, that the width stated on the invoice was incorrect and that the true dimensions were 6 feet 6 inches by two feet.

Duty was taken and classification made of the merchandise as "leather, tanned, n. s. p. f., at 15 per cent under paragraph 451."

---

[1] Reported in T. D. 32964 (23 Treas. Dec., 420).

The Board of General Appraisers, on protest duly made, reversed this decision of the collector and held the leather properly dutiable at the rate of 5 per cent ad valorem under the same paragraph as "band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem;" stating—

The testimony and official sample shows the leather in question to be of the same general character as that which was the subject of G. A. 7069 (T. D. 30794), which was later affirmed by the Court of Customs Appeals in United States v. Richards et als. (1 Ct. Cust. Appls., 537; T. D. 31548).

While it is true certain of the leathers in this case are of the "same general character" as those in the Richards case, that resemblance appertains rather to quality than condition, form, and shape. Moreover, the issues presented and contentions made in the two cases are entirely different. In this connection it should be noted that the recital in the Richards case of "'chrome bands,' which are narrow bands used for covering the rims of certain wheels on textile machinery," is of an invoice description and designation and not of a fact found in the case. The record in that case discloses that on trial thereof all the leathers were treated alike, to wit, as materials from which such articles are to be made rather than as the articles themselves or any condition of such advanced from the original bend. Neither in the briefs nor at oral argument of the Richards case was the proviso to paragraph 451 contended applicable, so that the issue here presented was neither presented nor decided in that case.

The Government before the board made and here makes contention that the merchandise is properly dutiable as "leather * * * not specially provided for" under paragraph 451, as assessed; or, if at 5 per cent thereunder as "band, bend, or belting leather," as claimed by the importer and decided by the board, then that there should be also applied the cumulative rate levied by the proviso to the paragraph. The invoked portions of the paragraph are as follows:

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; * * *: Provided, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

The condition of this merchandise is set forth in the uncontradicted testimony of Mr. Robert Crabb, president of the importing company, who testified before the board (record, pp. 9, 10) as follows:

Q. Will you please look at the official sample and say if that represents the character of the merchandise?—A. Yes, sir.

Q. Were these leather pieces in given lengths and sizes?—A. Yes; they were cut to a length and a width.

*　　*　　*　　*　　*　　*　　*

Q. Is there any object in having them cut to these sizes?—A. Well, they are supposed to be cut to make a large roller—for the purpose they are used for.

Q. Were the sizes in which they were imported such as to adapt them for a particular use?—A. Yes, for that purpose.

Q. They were cut to a size which adapted them for a special purpose, were they?—A. Yes, sir; they were cut out of a hide, that is all; there was no labor on it further than cutting them out of the hide.

Q. What is the name of the article into which they were made?—A. Make them into roller cover.

Q. Are they adapted for any other purpose?—A. Not that I know of.

. And again at page 8 of the record:

Q. Do you use it in precisely the condition imported, or do you have to cut it down and trim it?—A. We do not have to *trim* it.

We think it satisfactorily and conclusively appears from the record that the merchandise as imported is simply cut from the leather of the bovine species in suitable form for its intended use; that nothing has been done thereupon as a leather save cutting, and that nothing remains to be done thereupon in final use save the shaping to fit on to the particular roller of its final use.

We think the facts stated rule this case within the decision of this court in United States *v.* Ringk & Co. (3 Ct. Cust. Appls., 533; T. D. 32908), decided October 28, 1912, wherein we said:

The merchandise was properly rated by the board under the Richards case as belting leather. But the board failed to apply the last provisions [the proviso] of paragraph 451, which imposes an additional 10 per cent upon leather cut into "shoe uppers or vamps or other forms suitable for conversion into manufactured articles."

The decision of the Board of General Appraisers is *reversed.*