KOKEN BARBERS' SUPPLY Co. *et al. v.* UNITED STATES (No. 1710).[1]

1. CONSTRUCTION—LEATHER CUT INTO FORMS.

   The fact that successive tariff acts from 1890 to 1909, both inclusive, provided for "leather cut into forms suitable to be converted into manufactured articles" separately from manufactures of leather shows that Congress regards such merchandise as *leather*, and not *manufactures* of leather.

2. LEATHER CUT INTO FORMS—MANUFACTURES OF LEATHER.

   Strips of partly dressed leather, to be converted by further manufacturing processes into razor strops, are not dutiable as "manufactures of leather" under paragraph 360, tariff act of 1913, or as nonenumerated articles partly manufactured under paragraph 385. They are admissible free of duty as leather under paragraph 530.

United States Court of Customs Appeals, January 16, 1917.

APPEAL from Board of United States General Appraisers, Abstract 39349.

[Reversed.]

*Comstock & Washburn* (*Albert H. Washburn* and *J. Stuart Tompkins* of counsel) for appellants.

*Bert Hanson,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

[Oral argument Oct. 12, 1916, by Mr. Washburn and Mr. Lawrence.]

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MARTIN, Judge, delivered the opinion of the court:

The merchandise in this case was imported under the tariff act of 1913. It was described by the appraiser as "leather, cut into forms,

[1] Reported in T. D. 36966 (32 Treas. Dec., 92).

skived down, ready for use in razor strops," and under this description it was assessed with duty at the rate of 30 per cent ad valorem as "manufactures of leather," within paragraph 360 of the act.

The importers protested, claiming that the merchandise was free of duty as "leather not specially provided for," within paragraph 530 of the act.

The protest was submitted upon testimony to the Board of General Appraisers. The board held that the merchandise was not dutiable at 30 per cent ad valorem as manufactures of leather within paragraph 360, as assessed by the collector, nor free of duty as leather not specially provided for within paragraph 530, as claimed by the importers, but that it was properly dutiable at the rate of 15 per cent ad valorem as nonenumerated articles partly manufactured under paragraph 385 of the act. Since the protest was ineffective to present the latter claim, the board overruled it without approval of the official assessment.

The importers now appeal from this decision.

The paragraphs of the act of 1913 thus cited read as follows:

360. Bags, baskets, belts, satchels, card cases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather or parchment, not jewelry, and manufactures of leather or parchment, or of which leather or parchment is the component material of chief value, not specially provided for in this section, 30 per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining, luncheon and similar sets, 35 per centum ad valorem.

385. That there shall be levied, collected, and paid on the importation of all raw or unmanufactured articles not enumerated or provided for in this section, a duty of 10 per centum ad valorem, and on all articles manufactured, in whole or in part, not provided for in this section, a duty of 15 per centum ad valorem.

(Free List.) 530. All leather not specially provided for in this section and leather board or compressed leather; leather cut into shoe uppers or vamps or other forms suitable for conversion into boots or shoes; boots and shoes made wholly or in chief value of leather; leather shoe laces, finished or unfinished; harness, saddles, and saddlery, in sets or in parts, finished or unfinished.

The articles in question are strips of leather of uniform sizes about 18 inches in length and 2 inches in width, cut from tanned horsehide, and designed to be converted into razor strops. The leather from which they were cut was partly dressed, but it had not received any peculiar treatment for the purpose of preparing it as a material for the manufacture of strops. In speaking of the leather when in the whole hide a witness states without contradiction, "it may be turned into shoe leather and other leather for a thousand and one different things." The present strips were cut from such leather into the sizes above stated according to specifications directed by the importers. After such strips arrive in this country they are subjected to various substantial processes of manufacturing in order to convert them into finished razor strops. These are explained by the single witness in the case, Emil Morris, as follows:

Q. Describe a little more in detail just what the dressing and finishing process is that you mentioned for making the article Exhibit 1 into the condition of the illustrative Exhibit A?—A. It is what is called a curing process. Curing means finishing leather, or dressing is another term. The leather would first be buffed on sandpaper wheels to get all the roughness or harshness off; next it is oiled with neat's-foot oil; then after the oil has all been absorbed, it would be colored with some aniline color or some other color of that nature; and then that has to be glazed on a glazing machine or hand glaze; then dressed with a certain amount of tallow and different ingredients; then it has to be mounted and stamped before it is a completely finished article.

Q. In this piece of leather Exhibit 1 in a condition ready for use as a razor strop as imported?—A. No, sir.

Q. Why not?—A. It would absolutely ruin the razor; it is too harsh.

Q. I think you said the article Exhibit 1 was partly dressed?—A. Partly dressed leather, but it is not a partly dressed leather strop.

Q. Why do you term it partly dressed leather?—A. Because it is not completely dressed.

Q. What is the partly dressed process that has been applied to it?—A. It is submitted to what I would call partly cured; it has been oiled slightly to convert it into a partly finished piece of leather. In this condition it may be turned into, if it is in the whole hide—it may be turned into shoe leather and other leather for a thousand and one different things.

Q. Do you ever import whole horsehide or only pieces, or horsehide like the Exhibit 1?—A. We import whole horsehides, but not from this particular part of the country.

Q. (By Mr. Isenschmid.) This piece of leather is cut to the exact shape in which you use these?—A. Yes, sir. Pardon me, I don't know whether I understand your question.

Q. For making razor strops?—A. Intended to be converted into razor strops; yes, sir.

Q. This partial dressing is really all the dressing that is usually put upon leather, is it not?—A. No, sir.

Q. This leather?—A. Yes.

Q. Your only claim is it has not had applied to it all the dressing for fitting it for a razor strop?—A. Yes, sir.

Q. You do not deny it is a finished, complete piece of leather?—A. It is not a completely finished piece of leather, sir. It is leather, but not completely finished, because in this state as it is just now it can be turned into a dozen different kinds of leather. There are three different stages—raw, partly finished, and finished leather. I would call this the second stage, partly finished leather.

It is apparent from the foregoing testimony that the importations when entered for duty are merely tanned leather which has been cut into forms suitable to be manufactured into razor strops. The leather itself does not differ in character from the tanned hide out of which it was cut; its form only has been changed. In its condition as entered for duty it is not capable of use as razor strops, nor entitled to bear that name. All of the manufacturing processes which are peculiar to the conversion of leather as material into finished razor strops remain to be applied to the importations after their arrival in this country. The tanned hides from which these forms were cut, if imported whole, would certainly have been entitled to free entry as "leather not specially provided for" under paragraph 530, *supra*. The only question, therefore, is whether that status is changed in the

case of strips which are cut from such hides in forms suitable to be converted into razor strops, where nothing has been done to the leather except cutting it to form, and where the forms themselves are not capable of use as razor strops until after they are subjected to substantial and peculiar manufacturing processes. In other words, the question is whether under the tariff act of 1913 the operation of cutting the tanned hides into strips which are not capable of present use as razor strops, but which are suitable to be converted into strops by manufacturing processes, is an operation which belongs essentially to the mere production of leather material from which razor strops may be manufactured, in other words strop leather, or is rather itself the first step in the manufacture of strops from the original leather.

In order to decide this question it is well to consider the following tariff provisions:

### Act of October 1, 1890.

457. But leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, shall be classified as manufactures of leather, and pay duty accordingly.

### Act of August 27, 1894.

342. Leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, twenty per centum ad valorem.

### Act of July 24, 1897.

438. * * * *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, shall be classified as manufactures of leather and pay duty accordingly.

### Act of August 5, 1909.

451. * * * *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

It will be seen that in the tariff acts of 1890, 1894, 1897, and 1909 Congress treated "leather cut into forms suitable to be converted into manufactured articles" as *sui generis*, and provided for it by special classification, upon the theory nevertheless that such merchandise was essentially leather rather than manufactures of leather. In the act of 1890 such forms were subjected by specific provision to the same rate of duty as that imposed upon manufactures of leather. In the act of 1894 by special provision a duty of 20 per cent ad valorem was imposed upon such forms, this rate differing from that imposed upon manufactures of leather and also from that imposed upon leather not specially provided for in the act. In the act of 1897 Congress again specially provided that such forms should be classified as manufactures of leather and assessed accordingly. In the act of 1909 by special provision a cumulative duty of 10 per cent ad valorem was imposed upon such forms in addition to the rate of duty applicable to the kind of leather from which they were cut.

It may be repeated that these enactments indicate that in the tariff revisions aforesaid Congress understood and intended that leather cut into such forms as were *merely* suitable for conversion into manufactured articles were not themselves manufactures of leather, but in the absence of special provisions were still to be considered as leather. Such leather forms were invariably subjected to higher rates of duty than leather not cut to form, but this was accomplished in each instance by special provisions which impliedly acknowledged the view just expressed. In none of the acts in question did Congress leave such leather forms to be assessed with duty under the general classification of manufactures of leather, but even where the same rate of duty was imposed it was deemed necessary to enact a special provision to that effect.

In the tariff act of 1913, for the first time since the revision of 1890, Congress wholly omitted from the dutiable provisions of the act a special provision for leather cut into forms suitable for conversion into manufactured articles, and also for the first time within the same period "leather not specially provided for" was transferred from the dutiable list to the free list.

In view of the long-continued legislative policy of treating such leather forms *per se* as mere leather rather than as manufactures of leather, and of giving them a special dutiable status when the leather itself was dutiable, and in view of the fact that the leather from which these forms were cut was made free of duty by the tariff act of 1913, and no special provision for assessing such forms when cut therefrom appears in the act, we think it may fairly be concluded that Congress intended the forms like the leather which produced them to go into the free list under the provision for "all leather not specially provided for in this section." And since the latter classification covers these articles, according to the view just expressed, there would be no occasion for resorting to the provisions for nonenumerated articles either wholly or partly manufactured. See United States *v.* Ringk (3 Ct. Cust. Appls., 353; T. D. 32908); United States *v.* Dubied Machinery Co. (3 Ct. Cust. Appls., 442; T. D. 33033); United States *v.* Crabb (3 Ct. Cust. Appls., 373; T. D. 32964).

The Government, however, points out that paragraph 530, *supra*, contains a specific provision for the free entry of "leather cut into shoe uppers or vamps or other forms suitable for conversion into boots or shoes" and contends that Congress could not have intended that leather cut into other forms should be given free entry under the same paragraph. It is argued that in such case it would have been unnecessary to provide specifically for the free entry of boot and shoe forms, and furthermore that under the rule of *expressio unius* it should be understood that the specific provision for the free entry of leather cut to boot and shoe forms impliedly prohibits the free entry of other

or different forms. The Government argues that this rule applies with especial force in the present case because of the presence of the provision for "other forms, suitable for conversion into manufactured articles" in paragraph 451 of the act of 1909, *supra*, in juxtaposition with the provision for boot and shoe forms, and of the fact that all reference to "other forms" was omitted from paragraph 530 of the present act, whereas boot and shoe forms are specially named therein.

It can not be denied that the foregoing considerations are entitled to great weight, but we are inclined to the view that Congress inserted the specific reference to leather cut into boot and shoe forms within the free list of 1913 out of abundance of caution, notwithstanding the fact that the free list of that act provided in general terms to the same effect. Boots and shoes are *eo nomine* admitted free of duty by the paragraph in question, and it was evidently the legislative purpose that such leather forms as may be manufactured into boots and shoes should likewise be admitted free of duty. It was with the purpose of expressly providing for this that Congress specifically mentioned such forms in the same paragraph with the provision for the free entry of boots and shoes themselves. The legislative purpose was to make the paragraph more specific with respect to boot and shoe forms without detracting from the force and effect of the general provisions thereof.

We should say at this point that we do not mean to hold that leather articles can not in any instance be manufactured, or partly manufactured, by the single operation of cutting them into form, but we hold that in the present case that operation relates essentially to the production of material for the manufacture of razor strops, rather than to the manufacture of the material into strops.

We conclude that under the paragraph above copied the present importations are not dutiable as articles of leather wholly or partly manufactured, but are free of duty as leather not specially provided for, and the decision of the board overruling the protest is *reversed*.