TILGE & Co. *v.* UNITED STATES (No. 634).[1]

"HAT SWEATS"—FINISHED MANUFACTURES.

If it were an original proposition for consideration here there would be some difficulty in holding that by the proviso to paragraph 451, tariff act of 1909, it was the legislative intention to exclude from the operation of that proviso all forms cut from leather which were finished manufactured articles. However, the kindred clause in previous legislation having received a settled construction, the recent enactment must be taken as an enactment in view of that construction; and the importation is accordingly dutiable as manufactures of leather under paragraph 452 of that act.

United States Court of Customs Appeals, March 26, 1912.

APPEAL from Board of United States General Appraisers, Abstract 25192 (T. D. 31450).

[Affirmed.]

*Curie, Smith & Maxwell (W. Wickham Smith* and *Thomas M. Lane* of counsel) for appellants.

*William L. Wemple,* Assistant Attorney General (*Charles D. Lawrence* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

This case involves the dutiable classification of pieces of leather cut to form and ready to be sewed into men's hats as sweatbands.

---

[1] Reported in T. D. 32360 (22 Treas. Dec., 520).

It appears from the record that these articles are bought and sold in the trade as "hat sweats" and as such they are, after cutting to size, so far finished and complete that they are fit for immediate use in the manufacture of men's hats.

The collector of customs at the port of New York classified the goods as manufactures of leather and assessed them for duty at 40 per cent ad valorem under the provisions of paragraph 452 of the tariff act of 1909, which paragraph reads as follows:

452. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather, not jewelry, and manufactures of leather, or of which leather is the component material of chief value, not specially provided for in this section, forty per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining or luncheon and similar sets, fifty per centum ad valorem.

The importers objected to the collector's classification of the merchandise and to the duty assessed by him thereon, and by their protest, duly filed, set up several grounds of objection, none of which it is necessary to consider save that which is based on the claim that the importation is dutiable as "leather cut into * * * forms suitable for conversion into manufactured articles" under the proviso to paragraph 451, which reads as follows:

451. * * * *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

The Board of General Appraisers overruled the protest and the importers appealed.

The board's decision rests upon the ground that the goods are complete and finished manufactures of leather and that they are therefore excluded from the operation of the proviso above cited. The articles are made of leather and are known to the trade as "hat sweats." They have a name and form not borne by the original material from which they were manufactured. They subserve a purpose, and are adapted to a use for which the leather out of which they were made is not fitted or available. Considered as "hat sweats" they are finished articles and, barring the cutting to size, they are ready without further manipulation to be put immediately to the use for which they were made. Such articles are, in our opinion, finished manufactures, and the board was correct in so finding. That their status as finished manufactures removes them from the operation of the proviso to paragraph 451 is another question, however, and one of which we might be disposed to take a view different from that entertained by the board were the issue now raised for the first time. Indeed, if the interpretation of the proviso to paragraph 451 were an original proposition, we think we should find some difficulty in putting our finger on the precise language

which would justify us in concluding that it was the legislative intent to exclude from the operation of that particular part of the tariff law all forms cut from leather which had reached the stage of finished manufactured articles. Shoe uppers and shoe vamps, which are nothing more than forms cut from leather, are, after all is said and done, finished manufactured articles. True, they are materials intended for the use of the shoe manufacturer and do not belong to that class of manufactured articles destined for the use of the final consumer; none the less, they are finished manufactured articles, as has been frequently decided. United States *v.* George Meier (136 Fed. Rep., 764, 765); United States *v.* Richter (2 Ct. Cust. Appls., 167; T. D. 31680); Tidewater Oil Co. *v.* United States (171 U. S., 210, 217).

If such finished manufactured articles as shoe vamps and shoe uppers cut from leather are included within the meaning of the proviso it is hard to understand just how other forms cut from leather and suitable for conversion into manufactured articles may be excluded therefrom without amending the statute or denying to it the effect which its language imports. But however that may be, provisos similar to that here under discussion have been a part of every tariff. act since 1890, and not once, so far as we have been able to find, have hat sweats been classified by the board or by the courts as "other forms, suitable for conversion into manufactured articles." The original of the proviso here under consideration is to be found in paragraph 457 of the tariff act of 1890, and reads as follows:

457. But leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, shall be classified as manufactures of leather, and pay duty accordingly.

While this paragraph was in force the board had occasion twice to pass on the classification of hat sweats. In October, 1891, goods described by the appraiser as "finished skins cut into strips of various widths, and in length sufficient only for a single hat, some with edges bound by the sewing machine and intended for use as sweat bands for men's hats," were assessed as manufactures of leather at 35 per cent ad valorem under paragraph 461 of the tariff act of 1890. The merchandise was claimed to be "dressed skins for hatters' use." The board affirmed the action of the collector. Subsequent to this decision, in August, 1892, there was imported at the port of New York leather hat sweats of two kinds. One kind was shaped, embossed, and made into completed articles, ready for use. The other was simply strips of leather cut to size for hat sweats and which had not been further processed or manufactured. The importation was claimed to be skins dressed and finished and was classified by the collector of customs as manufactures of leather dutiable at 35 per cent ad valorem under paragraph 461. The board held that the

completed hat sweats were properly assessable as manufactures of leather, but that the incomplete hat sweats should have been classified as leather not otherwise provided for and assessed for duty under paragraph 455. *In re* Tilge & Co. (T. D. 13243). As the terms of paragraph 457 required that "leather cut into  *  *  * forms, suitable for conversion into manufactured articles" should be classified as manufactures of leather, it can not be said that in either of these cases were finished hat sweats excluded from the operation of the paragraph. Unfinished forms for hat sweats were, however, excluded in T. D. 13243, and in neither case was any reference made to paragraph 457, a fact which has some value in the light of subsequent adjudications by the board.

Paragraph 457 of the tariff act of 1890 was followed by paragraph 342 of the tariff act of 1894, which last-named paragraph reads as follows:

342. Leather cut into shoe uppers or vamps, or other forms, suitable for conversion into manufactured articles, twenty per centum ad valorem.

It will be noted that forms cut from leather were not required by this paragraph to be classified as manufactures of leather, but were subjected to a straight duty of 20 per cent ad valorem. Accordingly, the very first importation of hat sweats after the going into effect of the tariff act of 1894 squarely presented the question as to whether that class of goods was or was not "leather cut into  *  *  * other forms suitable for conversion into manufactured articles." In September and October, 1894, strips of leather cut to requisite lengths and sizes for lining the inside of hats and so complete that all that was needed to consummate their use was to sew them into the hats, were assessed for duty as *manufactures of leather* at 30 per cent ad valorem under paragraph 353. They were claimed by the importers to be dutiable at 20 per cent ad valorem as "leather cut into shoe uppers or vamps, *or other forms, suitable for conversion into manufactured articles,*" under paragraph 342. The board held that the goods were something more than leather cut into forms; that they were so far advanced in manufacture as to be a complete article commercially bought and sold under a designated name; and that, as no further labor was requisite to convert them into a manufactured article, they could not be construed to fall within the terms of paragraph 342. Accordingly, the protest was overruled and the collector's decision affirmed. *In re* Schorestene Frères (T. D. 15723). The decision in this case was affirmed without opinion by the Circuit Court for the Southern District of New York. (Suit 2155, Dec. 12, 1900.)

About the same time that it was decided by the board that completed hat sweats could not be classified under paragraph 342 as "leather cut into  *  *  * other forms suitable for conversion into

manufactured articles," it was decided that leather outsides for pocketbooks cut from leather into rectangular shapes were something more than leather cut into forms, and that they had been advanced beyond that condition by being subjected to an additional process of manufacturing, namely, embossing. They therefore sustained the collector in classifying the leather outsides as manufactures of leather and overruled the claim of the importer that they were "leather cut into   *   *   *   forms suitable for conversion into manufactured articles." *In re* Rumpp & Sons (T. D. 15724).

In November, 1901, paragraph 342 of the tariff act of 1894 was again construed by the board *In re* Schorestene Frères (T. D. 23349). That case covered an importation of leather sweat bands for hats, which were classified by the collector as manufactures of leather not specially provided for under paragraph 353, and which were claimed by the importer to be dutiable under paragraph 342 as "leather cut into   *   *   *   other forms suitable for conversion into manufactured articles." The board reiterated the conclusions reached in T. D. 15723, and affirmed the action of the collector in assessing the goods as manufactures of leather.

The proviso to paragraph 438 of the tariff act of July 24, 1897, was for all practical purposes a reenactment of paragraph 457 of the tariff act of 1890. Under this proviso hat sweats similar to those involved in the Schorestene case were imported. These goods were assessed as manufactures of leather under the provisions of paragraph 450, which imposed a duty of 35 per cent ad valorem on manufactures of leather, finished or unfinished. They were claimed to be leather, not otherwise provided for, under paragraph 438. The board sustained the collector. *In re* Tilge (T. D. 19417). In this case, although there was no claim that the hat sweats were "leather cut into   *   *   *   other forms suitable for conversion into manufactured articles," the decision of the board is of some value as distinctly indicating that the proviso to paragraph 438 had nothing to do with the determination of the duty which should be assessed on hat sweats.

The rule applied to hat sweats by the board was also applied to chrome leather strips prepared for automobile treads. These strips were cut into lengths and shapes suitable for treads, and in addition were beveled. They were held by the board to be manufactures of leather, finished or unfinished, under the provisions of paragraph 450 of the tariff act of 1897. *In re* Michelin Tire Co., Abstract 21030 (T. D. 29690).

The proviso to paragraph 451 of the tariff act of 1909 differs from paragraph 342 of the tariff act of 1894 only to the extent that it includes gauffre leather and imposes a different rate of duty. We must, therefore, regard the proviso as a substantial reenactment of

the paragraph just mentioned and as a confirmation and ratification by Congress of the interpretation given to paragraph 342 by the tribunals charged with the duty of interpreting it. Under such circumstances we do not feel at liberty to disregard the interpretation heretofore put upon the tariff provision for "leather cut into  *  *  * other forms suitable for conversion into manufactured articles," especially as it seems to have been the uniform customs practice for some 20 years or more to classify hat sweats as manufactures of leather and not as "leather cut into  *  *  *  other forms suitable for conversion into manufactured articles."

The decision of the Board of General Appraisers is therefore *affirmed*.