DEVOY *v.* UNITED STATES (No. 888).[1]

LEATHERS CUT TO FORM AND READY FOR USE.

> These book backs are not mere leather but new articles evolved from leather, bearing a distinctive name, and so processed that they are not only definitely and finally committed to a specific purpose, but they are expressly found to be fitted for no other. They were properly assessed as manufactures of leather under paragraph 452, tariff act of 1909. Tilge & Co. *v.* United States (3 Ct. Cust. Appls., 97; T. D. 32360).—Knauth, Nachod & Kuhne (T. D. 30085) distinguished.

United States Court of Customs Appeals  December 16, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7331 (T. D. 32282). [Affirmed.]

*Curie, Smith & Maxwell (Thomas M. Lane* of counsel) for appellant.

*William L. Wemple,* Assistant Attorney General (*Charles D. Lawrence,* special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Pigskin and sheepskin leathers cut to form and ready for use as book backs were classified by the collector of customs at the port of New York as manufactures of leather not specially provided for, and accordingly they were assessed for duty at 40 per cent ad valorem under the provisions of paragraph 452 of the tariff act of 1909, which in part reads as follows:

452. Bags, * * * and *manufactures of leather,* or of which leather is the component material of chief value, not specially provided for in this section, forty per centum ad valorem; * * *.

The importer protested that the merchandise was subject to the duty of 15 per cent ad valorem imposed by paragraph 451 and to the additional duty of 10 per cent prescribed in the proviso to said paragraph for gauffre leather and for "leather cut into shoe uppers or vamps or *other forms suitable for conversion into manufactured articles.*" The parts of paragraph 451 upon which the importer relies in his protest are as follows:

451. * * * Dressed upper and all other leather, * * * kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; * * *: *Provided,* That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, and gauffre leather, shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

The Board of General Appraisers found as a fact that the goods which were the subject of protest consisted of embossed "square pieces of leather cut ready for use as book backs," and printed or stamped with the title of the book they were designed to cover. On this finding, and the further finding that the merchandise was fitted for no other purpose than that of book backs, the board held that

---

[1] Reported in T. D. 33034 (23 Treas. Dec., 586).

the goods had advanced beyond the stage of forms cut from leather and that they were properly assessed by the collector as manufactures of leather. The protest was therefore overruled by the board, and the importer now appeals.

The finding of the board that all the book backs were printed or stamped with the title of the book was inaccurate, inasmuch as the evidence and samples clearly show that some of the book backs were not lettered or stamped with the title of the book which they were intended to cover. The book backs covered by protest No. 499498 were book backs which were not lettered, but as a matter of fact they were of such shape and finish and were so processed as to plainly indicate that they were designed for use as book backs and that they were commercially fit for no other purpose. Indeed, the testimony directly showed that the unlettered book backs submitted to the board were cut to size for the books which they were to back and that they were used "purely" for the making of cases for the binding of books.

Ever since 1890 customs officers, the Board of General Appraisers, and the courts have declined to regard as "forms" and have classified as manufactures completed shapes cut from leather and finished ready for conversion into manufactured articles. This practice has apparently been uniform and long continued and in our opinion has met with legislative approval. See *In re* Tilge & Co. (T. D. 12124); *In re* Tilge & Co. (T. D. 13243); *In re* Schorestene Frères *v.* United States (suit 2155, Dec. 12, 1900, Circuit Court, Southern District of New York); *In re* Rumpp & Sons (T. D. 15724); *In re* Schorestene Frères (T. D. 23349).

As originally passed, the paragraph covering leather forms prescribed that all forms cut from leather should be classified as manufactures of leather and pay duty accordingly. (Par. 457, tariff act of 1890.) Subsequently, by paragraph 342 of the tariff act of 1894, Congress elected to give such forms a tariff status of their own, and therefore made them dutiable, not as manufactures of leather, but as separate entities, at 20 per cent ad valorem. Notwithstanding the fact that Congress omitted from paragraph 342 of the tariff act of 1894 the provision of paragraph 457 of the tariff act of 1890, which directed that such articles should be classified as manufactures of leather, the board, in the Schorestene case (T. D. 15723) held, in January, 1895, that completed leather sweat bands, ready for use in the manufacture of hats, were dutiable as manufactures of leather under paragraph 353 of the tariff act of 1894, and not as forms suitable for conversion into manufactured articles under paragraph 342 of said act. If there had been no further legislation on the matter we should have little hesitation in saying that the board's ruling in the Schorestene case was erroneous, but while the Schorestene decision was pending on appeal Congress amended paragraph 342 of the tariff act of 1894 in such a way as to again require that all forms cut from

leather suitable for conversion into manufactured articles should be classified as manufactures of leather, and thereby indicated that it preferred the classification approved by the board rather than that contended for by the importer. This amendment was evidently passed in order to meet the consequences which would follow a reversal of the board's decision on appeal, and in the light of subsequent events that amendment can be regarded in no other way than a definite negation of any legislative intent on the part of Congress to classify under paragraph 342 those forms cut from leather which had reached the stage of *finished, completed, articles*. After the passage of the tariff act of 1897 the Circuit Court for the Southern District of New York affirmed the decision of the board in the Schorestene case (suit 2155), and thus settled the meaning of paragraph 342. Congress evidenced its contentment with the conclusion reached by substantially reenacting the judicially interpreted paragraph in its very next tariff act as the proviso to paragraph 451 thereof. We do not see how it is possible to draw from this history of the legislation any other deduction than that the construction which the reenacted paragraph had theretofore received from customs officers, the board, and the courts was approved by Congress and that therefore the provision was not intended to cover those forms cut from leather which were completed articles, finished and ready for use.

We can not admit that the reenactment of paragraph 342 of the tariff act of 1894 was a legislative approval of the classification of finished hat sweats and nothing more. In our opinion, the approval of Congress must be presumed to have been given not so much to the classification of the merchandise as to the statutory construction which made that classification possible. Hat sweats were excluded by the board and the courts from the operation of paragraph 342 of the tariff act of 1894, not because they were hat sweats, but because they were completed articles, ready for use, and we think the status or condition which excluded them must necessarily exclude the book backs under discussion. These book backs are not mere leather, but new articles evolved from leather, bearing a distinctive name and so processed that they are not only definitely and finally committed to one specific particular purpose, but they are expressly found to be fitted for no other. They are finished articles of leather, ready for use, and therefore manufactures of leather just as much as were the hat sweats considered by the board and the courts in the cases hereinbefore cited.

We have carefully considered the decision of the board in the protest of Knauth, Nachod & Kuhne (T. D. 30085) and we find nothing in it to induce us to recede from the views which we expressed in the case of Tilge & Co. *v.* United States (3 Ct. Cust. Appls., 97; T. D. 32360). So far as appears from the decision, the Knauth, Nachod & Kuhne case did not involve book backs finished, completed, and ready for use, but square pieces of leather which had neither acquired a new name nor the character of a new article. If this finding was correctly

deduced by the board from the evidence which it had before it, the merchandise there involved did not rise to the dignity of a completed manufacture, and therefore it can not be said that the board had changed its mind as to the principle invoked by it in the hat-sweat cases. But even if the board had changed its mind, the Knauth, Nachod & Kuhne protest was decided subsequent to the passage of the present tariff act, and consequently could not affect the presumption of legislative approval which had already attached to previous decisions of the board interpreting the paragraph reenacted.

The decision of the Board of General Appraisers is *affirmed.*