MICHELIN TIRE CO. *v.* UNITED STATES (No. 1172).[1]

LEATHER BELTS FOR MAKING AUTOMOBILE TREADS.

The leather strips here had been given a form and a size specially and definitely adapting them for conversion into automobile treads of different lengths and widths, and they were dutiable as assessed at 15 per cent ad valorem under paragraph 451, tariff act of 1909.

United States Court of Customs Appeals, January 22, 1914.

APPEAL from Board of United States General Appraisers, Abstract 31884 (T. D. 33325).

[Affirmed.]

*Coudert Bros.* (*John P. Murray* on the brief) for appellant.

*William L. Wemple*, Assistant Attorney General (*Charles D. Lawrence*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

SMITH, Judge, delivered the opinion of the court:

Leather strips from 2 to 7 feet long and from about $3\frac{1}{2}$ to about $5\frac{1}{3}$ inches wide were classified by the collector of customs at the port of New York as "skins dressed and finished and cut into forms suitable for use as belts." The merchandise was accordingly subjected to the duty of 15 per cent ad valorem imposed by paragraph 451 on leather not specially provided for and to the additional duty of 10 per cent ad valorem specified in the proviso to that paragraph for leather cut into forms suitable for conversion into manufactured articles. The pertinent parts of the paragraph under which the merchandise was classified and assessed for duty are as follows:

451. Band, bend, or belting leather, rough leather, and sole leather, five per centum ad valorem; dressed upper and all other leather, calfskins tanned or tanned and dressed, kangaroo, sheep and goat skins (including lamb and kid skins) dressed and finished, other skins and bookbinders' calfskins, all the foregoing not specially provided for in this section, fifteen per centum ad valorem; * * *: *Provided*, That leather cut into shoe uppers or vamps or other forms, suitable for conversion into manufactured articles, * * * shall pay a duty of ten per centum ad valorem in addition to the duty imposed by this paragraph on leather of the same character as that from which they are cut.

To the classification and assessment of duty made by the collector protests were entered by the importer. One of these protests made the claim that the leather was dutiable as band or belting leather at 5 per cent ad valorem under the first clause of paragraph 451. The others claimed that the merchandise was dutiable either under that clause or dutiable at only 10 per cent ad valorem as provided by the proviso to the paragraph.

---

[1] Reported in T. D. 34131 (26 Treas. Dec., 152).

The Board of General Appraisers found that the merchandise was belting leather cut into forms suitable for the manufacture of automobile treads and therefore held the importation subject to the duty of 5 per cent ad valorem prescribed for belting leather by the first clause of paragraph 451 and to the 10 per cent additional duty imposed by the proviso to said paragraph on leather when cut into forms suitable for conversion into manufactured articles. The importers appealed, and in support of their appeal they now insist that while the importation may be properly regarded as belting leather, it can not be classified as leather cut into forms suitable for conversion into manufactured articles or subjected to the additional duty prescribed for such forms by the proviso to paragraph 451.

So far as appears from the record the Government took no appeal from the decision of the board, and apparently does not dispute the finding of the board that the merchandise is belting leather. It does contend, however, that the leather has been cut into forms and that consequently the importation should pay duty at not less than 15 per cent ad valorem.

The merchandise was returned by the appraiser as "skins dressed and finished and cut into forms suitable for use as belts." The testimony on the part of the importers is to the effect that the leather strips are devoted by them to no other purpose than the manufacture of automobile treads and that they are imported cut to a width proportioned to the diameter of the automobile tire on which they are designed to be used. The witness, Cramer, buyer for the importers, testified that the length of the strips varied from 2 feet to 6 feet or perhaps 7 feet, but that a single strip was not sufficiently long to cover the outer circumference of the tire and that therefore it was necessary to sew together two or more strips in order to make a tread of the requisite length. We do not think that this testimony is fairly susceptible of the interpretation that the leather strips were cut to lengths wholly without regard to the use for which they were intended, and that it was a matter of indifference whether three short or two long strips would be required to make a tread. That manufacturers would naturally avoid unnecessary stitching and waste in cutting must be presumed, and it may therefore be concluded with some confidence that the leather strips used for the manufacture of automobile treads are not made up into lengths or imported at random, but with due regard to the dimensions of the tire to be covered.

In our opinion the evidence establishes that the leather strips were given a form and a size which especially and definitely adapted them for conversion into automobile treads of different lengths and widths, and although strips of that kind might be cut up into belts or in exceptional cases used for the manufacture of a belt without being cut at all, it can hardly be said that that fact made the strips any the

less peculiarly or particularly fitted for the manufacture of automobile treads.

The merchandise imported is belting leather cut into forms especially suitable for conversion into a definite manufactured article and is therefore dutiable at 15 per cent ad valorem, as found by the board.

Protest 587247 did not make the claim that the merchandise was dutiable as leather cut into forms and, as we understand the board's decision, that protest was not sustained.

The decision of the Board of General Appraisers is *affirmed.*