# CASES ADJUDGED IN THE UNITED STATES COURT OF CUSTOMS APPEALS.

BRUNSWICK-BALKE-COLLENDER CO. *v.* UNITED STATES (NO. 1630.)[1]

LEATHER CUE TIPS, HOW DUTIABLE.

Cue tips, made by cutting with a round stamp a sheet of soft and a sheet of hard leather glued together, most of them having the soft-leather side rounded on the lathe, are too far advanced in condition to be admissible free under paragraph 530, tariff act of 1913, as "* * * leather not specially provided for * * * and leather board or compressed leather." Since they are a manufacture of leather, they are more specifically provided for by paragraph 360, as such, than by paragraph 385 as a manufacture not specially provided for, and, in accordance with the administrative practice under the tariff act of 1909, sanctioned by reenactment in the act of 1913, they are so dutiable.

United States Court of Customs Appeals, March 9, 1916.

APPEAL from Board of United States General Appraisers, Abstracts 38595 and 38865. [Affirmed.]

Crim & Wemple (*William L. Wemple* of counsel) for appellants.

Bert Hanson, Assistant Attorney·General (*Thomas J. Doherty*, special attorney, of counsel), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this case consists of cue tips. It was assessed for duty as a manufacture of leather under paragraph 360 of the act of 1913. The importers protested, claiming free entry under various paragraphs, but have limited their discussion under claim for free entry to paragraph 530. The claim was also made, and is urged here, that if not free the merchandise is subject to duty at 15 per cent only, under paragraph 385, as an unenumerated manufactured article.

The evidence discloses that the merchandise consists of rounded leather tips, consisting of two kinds of leather, the upper leather, which is soft, and a hard leather piece, which are glued together. The hard leather forms the foundation for the soft leather, and when applied to the cue is glued to the wooden end of the cue and holds to the cue, and the evidence shows that the cue tip holds stronger than if the hard leather were not present. It protects, also, the upper leather and prevents it becoming spread out over the cue. After the two have been glued together in the piece they are stamped with

[1] Reported in T. D. 36253 (30 Treas. Dec., 454).

a stamp of various sizes to produce the various sizes of tips. Some of them are imported without other process, and some of them are put on a lathe and turned round to shape them—that is to say, the upper surface of the tip is rounded. The importation in question consists, according to the testimony, mostly of those which have been rounded in shape, but there are some that have not been subjected to this process. There is, however, no evidence to show the quantity of each, the testimony being that most of these tips are rounded, most of them having been put upon the lathe after they have been stamped out.

Paragraph 530, under which free entry is claimed, reads:

530. All leather not specially provided for in this section and leather board or compressed leather; leather cut into shoe uppers or vamps or other forms suitable for conversion into boots or shoes; boots and shoes made wholly or in chief value of leather; leather shoe laces, finished or unfinished; harness, saddles, and saddlery, in sets or in parts, finished or unfinished.

It is clear that the only provision in this paragraph under which these articles could be admitted is that providing for "all leather not specially provided for in this section and leather board or compressed leather." The articles here can not fall within this provision, for the reason that within any rule that may be taken they are advanced beyond the condition of leather, leather board, or compressed leather.

As to the claim under paragraph 385 for manufactured articles, it is perhaps sufficient to say that if the merchandise in question here has reached the dignity of manufactured articles, the provision for manufactures of leather is more specific than the general provision for manufactures not specially provided for.

We think the facts bring this importation clearly within the terms of paragraph 360. This paragraph is a reenactment of paragraph 452 of the act of 1909, with the exception of the provision inserted in the present act covering parchment, by the insertion of the words in the appropriate place after leather "or parchment." The paragraph as it now stands reads as follows:

360. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, made wholly of or in chief value of leather or parchment, not jewelry, and manufactures of leather or parchment, or of which leather or parchment is the component material of chief value, not specially provided for in this section, thirty per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining, luncheon, and similar sets, thirty-five per centum ad valorem.

This court has had before it in a number of cases the statute of 1909 and has laid down a rule which covers the present importation. The first was Tilge & Co. v. United States (3 Ct. Cust. Appls., 97; T. D. 32360), which case reviews at length the authorities upon the subject and holds that "manufactures of leather," as the term

appeared in paragraph 452 of the act of 1909, covered articles the component material of which was leather, and which had been advanced to a state adapting them and fitting them for a particular use. The articles there in question were hat sweats. It was said:

> The articles are made of leather and are known to the trade as "hat sweats." They have a name and form not borne by the original material from which they were manufactured. They subserve a purpose and are adapted to a use for which the leather out of which they were made is not fitted or available. Considered as "hat sweats" they are finished articles and, barring the cutting to size, they are ready without further manipulation to be put immediately to the use for which they were made. Such articles are, in our opinion, finished manufactures, and the board was correct in so finding.

The case of Tidewater Oil Co. *v.* United States (171 U. S., 210) was cited in support of this ruling.

The question was again before the court in Devoy *v.* United States (3 Ct. Cust. Appls., 444; T. D. 33034). The merchandise there in question consisted of pieces of leather cut ready for use as book backs. Some of the book backs were lettered and some were not. But of the latter it was said, "as a matter of fact they were of such shape and finish and were so processed as to plainly indicate that they were designed for use as book backs and that they were commercially fit for no other purpose." These were held dutiable under paragraph 452 of the act of 1909.

In these two cases it is pointed out that there had been an administrative construction of the term "manufactures of leather," which included articles like those there in question within that term, and that this administrative construction had had legislative approval by reenactment. The evidence in the present case shows the same history as to cue tips.

The reasoning of the cases cited brings the present importation clearly within the rule established, and the decision of the board sustaining the assessment is *affirmed.*