UNITED STATES *v.* STATE FORWARDING & SHIPPING CO. (No. 2512)[1]

LEATHER CUT INTO FORMS—MATERIALS AND MANUFACTURES DISTINGUISHED
Pieces of the grain side of split sheep leather, about 10¾ by 7¾ inches, colored, chiefly used to be made, by considerable further processing, into book bindings, though sometimes made into cap visors, knife and card cases, and wallets, are not far enough advanced to be dutiable under paragraph 1432, Tariff Act of 1922, as manufactures of leather, and are free under paragraph 1606 as leather cut into forms. The coloring or dyeing of them is not sufficient to make them manufactures, especially as it is not shown that the color was given them by a separate process.

## United States Court of Customs Appeals, May 29, 1926

APPEAL from Board of United States General Appraisers, G. A. 8872, T. D. 40441

[Affirmed.]

*William W. Hoppin* and *Charles D. Lawrence*, Assistant Attorneys General (*Oscar Igstaedter*, special attorney, of counsel), for the United States.
*Allan R. Brown* for appellee.

[Oral argument December 16, 1925, by Mr. Igstaedter and Mr. Brown]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

GRAHAM, Presiding Judge, delivered the opinion of the court:

The merchandise imported here is shown by the evidence to be pieces of sheepskin leather. The sheepskin has been split and the pieces imported made from the grain part. The two official samples are colored scarlet and blue, respectively, but whether this coloring was done in the tanning or afterward, does not appear. The pieces of leather were cut from the hides and are about 10¾ by 7¾ inches in size; nothing further has been done to them. They are ordered by the importer, engaged in the business of book binding and publishing, to be made into book backs for certain sets of books which it publishes, and their principal use is for making full leather binding; they are used, however, by importer, at times, for half leather and three-quarter leather bindings, and when so used, the pieces imported are cut up into proper sizes. There has also been an occasional use for making visors for caps, and knife cases, wallets and card cases. The pieces of leather have no specific common or trade name. To be converted into book backs, they must undergo some seven or eight processes after importation. They are cut to these sizes as imported in order to avoid waste.

They were classified for duty purposes by the collector as manufactures of leather under paragraph 1432 of the Tariff Act of 1922, and are claimed in the protests to be free of duty as leather, cut into forms, under paragraph 1606 of said act, or in the alternative, dutiable at 20 per centum ad valorem under paragraph 1431, or at 20 per centum

[1] T. D. 41690.

ad valorem as unenumerated manufactured articles under paragraph 1459 of said act. The court below sustained the protest, holding the same to be free of duty under said paragraph 1606 and the Government appeals.

Said paragraphs 1432 and 1606 are as follows:

PAR. 1432. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather or parchment, and moccasins, and manufactures of leather, rawhide, or parchment or of which leather, rawhide, or parchment is the component material of chief value, not specially provided for, 30 per centum ad valorem; any of the foregoing permanently fitted and furnished with traveling, bottle, drinking, dining, or luncheon, sewing, manicure, or similar sets, 45 per centum ad valorem.

PAR. 1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished, and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

The issue here is whether the goods imported are manufactures of leather or leather cut into forms suitable for conversion into manufactured articles.

Since the first appearance in our tariff laws of a provision for leather cut into forms suitable for conversion into manufactured articles (paragraph 457, tariff act of October 1, 1890), the courts have recognized the Congressional intent to segregate, for duty purposes, leather which has been processed to the point where it has become a manufacture of leather, and leather which has been merely cut into forms. The line of demarcation has been indicated in various cases in this court, to which we now refer.

In *Tilge* v. *United States*, 3 Ct. Cust. Appls. 97, certain leather "hat sweats" were classified as manufactures of leather and were claimed to be leather cut into forms under the provisions of the tariff act of August 5, 1909. The court said, in part:

The articles are made of leather and are known to the trade as "hat sweats." They have a name and form not borne by the original material from which they were manufactured. They subserve a purpose, and are adapted to a use for which the leather out of which they were made is not fitted or available. Considered as "hat sweats" they are finished articles, and, barring the cutting to size, they are ready without further manipulation to be put immediately to the use for which they were made. Such articles are, in our opinion, finished manufactures, and the board was correct in so finding.

The court thereafter cited several cases and, after commenting on the fact that the uniform trend of decisions was that the articles in question were manufactures of leather and not leather cut into forms, so held.

Again, in *Devoy* v. *United States*, 3 Ct. Cust. Appls. 444, the same issue was involved, the articles imported being pigskin and sheepskin leathers cut to form and ready for use as book backs. The court said:

Ever since 1890 customs officers, the Board of General Appraisers, and the courts have declined to regard as "forms" and have classified as manufactures completed shapes cut from leather and finished ready for conversion into manufactured articles. This practice has apparently been uniform and long continued and in our opinion has met with legislative approval.

Then again the court said, commenting upon the *Schorestone* case, T. D. 15723:

Hat sweats were excluded by the board and the courts from the operation of paragraph 342 of the tariff act of 1894, not because they were hat sweats, but because they were completed articles, ready for use, and we think the status or condition which excluded them must necessarily exclude the book backs under discussion. These book backs are not mere leather, but new articles evolved from leather, bearing a distinctive name and so processed that they are not only definitely and finally committed to one specific particular purpose, but they are expressly found to be fitted for no other. They are finished articles of leather, ready for use, and therefore manufactures of leather just as much as were the hat sweats considered by the board and the courts in the cases hereinbefore cited.

In *United States* v. *Ringk & Co.*, 3 Ct. Cust. Appls. 353, leather cut into strips and imported for manufacture into picker belts was involved. The court said, in speaking of the hat sweats in the *Tilge* case, *supra*:

They had gone through a process of manufacture much more elaborate and complete than has been applied to the merchandise in the present case, which has had no process of manufacture applied to it except the mere cutting to approximate length.

The court held the imported goods should have been classified as leather cut into forms.

In *Bahnsen & Co.* v. *United States*, 7 Ct. Cust. Appls. 385, similar picker straps were involved. It was shown that the only process applied to the leather in question was that of cutting the hide into strips and that to be made into picker straps these strips must be cut to length, sometimes to width, holes punched, and other processes applied, and that, as shown by the samples, the pieces were capable of a multitude of uses. The court held they were not manufactures of leather, but leather cut into forms, and held that inasmuch as the tariff act of October 3, 1913, omitted the provision for leather cut into forms, the strips could not be so classified, but must be classified as leather.

In *Koken Barbers' Supply Co.* v. *United States*, 7 Ct. Cust. Appls. 394, strips of horse-hide leather designed to be converted into razor strops, but which strips must be subjected to many other processes to manufacture razor strops, were classified as manufactures of leather and claimed to be free as leather not specially provided for. The court said:

In view of the long-continued legislative policy of treating such leather forms per se as mere leather rather than as manufactures of leather, and of giving them

a special dutiable status when the leather itself was dutiable, and in view of the fact that the leather from which these forms were cut was made free of duty by the tariff act of 1913, and no special provision for assessing such forms when cut therefrom appears in the act, we think it may fairly be concluded that Congress intended the forms like the leather which produced them to go into the free list under the provision for "all leather not specially provided for in this section."

The same distinction was recognized, under the Tariff Act of 1922, in *Kleinberger & Katz v. United States*, 12 Ct. Cust. Appls. 571.

From the facts in this record and the law as announced in the line of decisions we have here cited, it is apparent the material here imported can not properly be classified as manufactures of leather. While certain manufacturing processes have been applied to them, these processes have not progressed to the point where they may be treated, for tariff purposes, as manufactures of leather. They are nothing more than leather cut into forms, suitable for conversion into manufactured articles. It is contended that the coloring or dyeing process which has been applied to these pieces of leather is sufficient to take them out of the class of leather cut into forms, as defined by the decisions. We are not, however, prepared to hold, on the record now before us, that such is the case. It nowhere appears whether this coloring occurred during the process of tanning or preparation of the leather, or whether it has occurred since. In any event the court is of opinion that such coloring or dyeing, alone, is not such a further processing of the leather in question as would take them out of the classification of leather cut into forms.

The judgment of the Board of General Appraisers (now the United States Customs Court) is *affirmed*.

## CONCURRING OPINION

SMITH, Judge: Colored sheep skin, cut into rectangular forms and to a special size suitable for conversion into book covers, was classified by the collector at the port of New York as manufactures of leather and accordingly assessed for duty at 30 per centum ad valorem under that part of paragraph 1432, which reads as follows:

PAR. 1432. Bags * * * and manufactures of leather * * * not specially provided for, 30 per centum ad valorem.

The importer protested that the merchandise was leather cut into forms suitable for conversion into manufactured articles and claimed that the importation was entitled to free entry under section 201, paragraph 1606 of the free list of the Tariff Act of 1922, which section and paragraph, in so far as pertinent, read as follows:

### FREE LIST

SECTION 201. That on and after the day following the passage of this act * * * the articles mentioned in the following paragraphs when imported into the United States * * * shall be exempted from duty.

PAR. 1606. Leather: * * * leather cut into shoe uppers * * * or other forms suitable for conversion into manufactured articles * * *

The Board of General Appraisers sustained the protest and the Government appealed. `

It appears from the return of the appraiser that the merchandise` consists of dressed colored sheepskin leather, cut to a special size suitable for use as book covers. The undisputed evidence in the case, however, establishes that the importation is leather cut to size and form for particular books, and that the leather so cut must be further processed to fit it for use as book covers. Before the forms become book covers the corners must be cut, the edges must be beveled and the leather must be prepared to receive the stiffening board. When the edges are turned in and glued to the stiffening board and the leather has been embossed or dye-stamped, the material so processed becomes a book cover.

The appellant contends, first, that the goods are manufactures of leather; second, that as the leather articles are not only cut to form, but dressed and dyed, they are not within the meaning of paragraph 1606; third, that if the merchandise is not dutiable as manufactures of leather, it is dutiable as dressed and finished sheep leather at 20 per centum ad valorem under that part of paragraph 1431, which reads as follows:

PAR. 1431. Chamois * * * and sheep * * * leather dressed and finished, other than shoe leather, 20 per centum ad valorem.

The goods have been so dealt with by manufacturing processes that they are committed to a single use, and, as they have not been advanced beyond the status of leather cut to form, they are provided for *eo nomine* in paragraph 1606, as leather cut into forms suitable for conversion into book backs.

The phrase "leather cut into shoe uppers * * * or other forms suitable for conversion into manufactured articles," is in effect an *eo nomine* designation and must prevail as against the designation "manufactures of leather."

Leather cut into forms means leather which has been so shaped as to fit it for conversion into one particular kind or class of manufacture, but if leather so cut be further advanced so as to make a book cover, a "hat sweat" or an automobile tread, it ceases to be leather cut into form. *Devoy* v. *United States,* 3 Ct. Cust. Appls. 444; *Tilge & Co.* v. *United States,* 3 Ct. Cust. Appls. 97; *United States* v. *Dubied Machinery Co.,* 3 Ct. Cust. Appls. 442, 443; *United States* v. *Ringk,* 3 Ct. Cust. Appls. 353; *United States* v. *Crabb,* 3 Ct. Cust. Appls. 373; *Michelin Tire Co.* v. *United States,* 5 Ct. Cust. Appls. 91.

The appellant relies on *Devoy* v. *United States, supra,* and *Tilge* v. *United States, supra,* but both cases far from sustaining the conten-

tions of the Government, are in accord with the decision of the board as to the nature and classification of the importation. In the *Devoy* case the goods had been advanced beyond the status of forms and had become book backs, in fact or as described in the decision, embossed "square pieces of leather cut *ready for use as book backs.*"

In the *Tilge* case the leather cut into forms was subjected to further manufacturing processes which converted the forms into "hat sweats," which was something more than leather cut to form for a specific manufacture.

The merchandise in the *Dubied* case was leather cut into forms for automobile treads and differed from the goods in the *Devoy* and *Tilge* cases, in this, that the forms were still forms and had not been converted into automobile treads. The merchandise in this case has not been advanced beyond the status of leather cut into forms and has not been converted into book backs. The merchandise is still leather cut into forms suitable for conversion into book backs and is therefore entitled to free entry by virtue of its *eo nomine* designation in paragraph 1606.

Leather that is dressed and dyed is still leather, not a manufacture of leather, and if when cut to forms it is fit for no use other than the making of one special class or kind of articles, it is still leather cut to form.

The provision of paragraph 1606 upon which the importer bases his protest, applies to all leather cut into forms suitable for conversion into manufactured articles and such forms are within the scope of the paragraph irrespective of whether the leather from which they were cut was made of the hides of bovine animals, or the skins of pigs, seals, goats or sheep. The skivers of sheep skin have been processed into sheep leather cut to form and are no longer sheep leather from which it follows that they are not provided for in paragraph 1431 as argued by the Government.

It appears from the testimony of a witness connected with the firm for which the merchandise was imported that during the war his house sold excess stock which was used for making visors for officers' caps. That witness also testified that *waste* and *scrap* of the leather imported was sold to manufacturers of knife cases, wallets, and cardcases. Leather cut to form and commercially used for the making of book backs only was not reduced to the category of mere leather or deprived of its status as leather cut to form by one sale as a material for making visors. Leather cut to form and used in normal times for the manufacture of book backs only did not cease to be leather cut to form because the abnormal and extraordinary conditions of a world war made it available for another use. Prices are paid and articles are used for a purpose when the nation is at war which would not be commercially practicable in time of

peace. Leather cut to form for the making of book backs which has become scrap or waste is necessarily unfit for the manufacture of book backs and can not be regarded as leather cut to form for book backs.

I concur in the conclusion reached.