A. H. Ringk & Co. et al *v.* United States (No. 3022[1])

United States Court of Customs Appeals, May 11, 1928

*Allan R. Brown* for appellants.

*Charles D. Lawrence*, Assistant Attorney General (*Ralph Folks* and *Fred J. Carter*, special attorneys, of counsel), for the United States.

---

[1] T. D. 42769.

[Oral argument February 15, 1928, by Mr. Brown and Mr. Carter]

Before GRAHAM, Presiding Judge, and SMITH, BARBER, BLAND, and HATFIELD, Associate Judges

HATFIELD, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is represented by collective Exhibit No. 1, protest No. 168378-G; Exhibit No. 1, protest No. 168842-G, which represents an Italian leather; and the official sample in protest No. 168842-G, which represents an Austrian leather. The exhibits, including the official sample, consist of five pieces of sheepskin leather. They differ in size, shape, and design; but, after having been cut from leather in the russet condition to a size and form to accommodate a particular design, each has been not only embossed, but more elaborately decorated by the addition of various shades of color. The official sample in protest No. 168842-G, in addition to the embossing and coloring processes, has been further advanced by the addition of a "paper backing."

The merchandise was assessed for duty by the collector at the port of New York at 30 per centum ad valorem, as manufactures of leather under paragraph 1432 of the Tariff Act of 1922, the pertinent part of which reads as follows:

PAR. 1432. Bags, baskets, belts, satchels, cardcases, pocketbooks, jewel boxes, portfolios, and other boxes and cases, not jewelry, wholly or in chief value of leather or parchment, and moccasins, and manufactures of leather, rawhide, or parchment or of which leather, rawhide, or parchment is the component material of chief value, not specially provided for, 30 per centum ad valorem; * * *

The importers claim that the importations are free of duty as "forms suitable for conversion into manufactured articles," under paragraph 1606, or alternatively, dutiable at 20 per centum ad valorem as sheep leather, dressed and finished, under paragraph 1431. These paragraphs read respectively as follows:

PAR. 1606. Leather: All leather not specially provided for; harness, saddles, and saddlery, in sets or parts, except metal parts, finished or unfinished and not specially provided for; leather cut into shoe uppers, vamps, soles, or other forms suitable for conversion into manufactured articles; and leather shoe laces, finished or unfinished.

PAR. 1431. Chamois skins, pianoforte, pianoforte-action, player-piano-action leather, enameled upholstery leather, bag, strap, case, football, and glove leather, finished, in the white or in the crust, and seal, sheep, goat, and calf leather, dressed and finished, other than shoe leather, 20 per centum ad valorem.

The smaller of the three exhibits in collective Exhibit No. 1 is approximately 5 by 6½ inches in size. It has not been so processed as to dedicate it to the manufacture of a particular class or kind of articles, but is used commercially for the manufacture of a variety of articles, such as cigarette cases, cardcases, bill folds, pocketbooks or envelope purses, and other small "fancy leather goods" articles.

The larger exhibits in the case have been so designed and processed as to be dedicated to the manufacture of pocketbooks or hand bags. They are commercially fit for no other use.

According to the witness, Robert Herrmann, who testified for the Government, the so-called leather forms are first embossed. He then said: "Then there is a stencil which is laid over it, and the color is applied by an air brush, and then it leaves that open work of the stencil."

The witness, Louis M. Musliner, who also testified for the Government, described the method of processing the leather forms as follows: "It is first embossed in the russet condition, then the different colors are added as they would best blend. Then the border is colored separately. Then the gold tooling is done." He then testified:

Q. Are the different colors put on at the same time or by different operations?—A. All separate operations.

Q. When you put one color on, do you have to allow it to dry before putting another color on?—A. Yes, sir.

Q. What length of time would be involved in coloring merchandise like 7135 in collective Exhibit 1?—A. When the one color is put on, then it is set aside and then the next color is put on, so it is difficult to say how long it takes.

Q. Is it done by hand, at times?—A. Yes, sir.

It also appears from the record that, after the leather forms have been embossed and colored, they are worth approximately three times their original values.

To be converted into the manufactured articles for which they are designed they must undergo several processes after importation.

In an opinion by McClelland, Justice, the court below held that the articles in question were not free of duty under paragraph 1606, as "forms suitable for conversion into manufactured articles," but were dutiable as manufactures of leather under paragraph 1432. In its opinion the court said:

If the involved articles had been imported as originally cut from plain leather of sheepskin origin it might be urged with more reason that they were simply "cut * * * into forms suitable for conversion into manufactured articles," but, inasmuch as after being so cut they were elaborately processed, as hereinbefore detailed, so as to fit them for special uses, they are therefore properly classifiable as manufactures of leather.

It is claimed by appellants that the imported articles are not dutiable as manufactures of leather, because they are not so processed as to be committed to a single use; and that they are free of duty under paragraph 1606 as leather cut into forms suitable for conversion into manufactured articles. It is claimed, alternatively, that, if they are not free of duty under paragraph 1606, they are dutiable at only 20 per centum as bag leather, or, as sheep leather, finished, under para-

graph 1431, in accordance with the decision in the case of *Kleinberger & Katz* v. *United States*, 12 Ct. Cust. Appls. 571, T. D. 40798.

It is contended that the decision of this court in the case of *United States* v. *State Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 153, T. D. 41690, holding that certain colored leather forms were free of duty under paragraph 1606, is controlling of the issues in this case; and that, as the articles in question are not completely manufactured articles, but require further processing in order to convert them into such articles, they are not within the rule announced in *Tilge & Co.* v. *United States*, 3 Ct. Cust. Appls. 97, T. D. 32360, and *Devoy* v. *United States*, 3 Ct. Cust. Appls. 444, T. D. 33034, wherein it was held that completely manufactured articles of leather were not properly classifiable as forms suitable for conversion into manufactured articles under paragraph 451 of the Tariff Act of 1909.

The Government contends that the decisions of this court in *United States* v. *Portenoy Co.*, 15 Ct. Cust. Appls. 307, T. D. 42483; *Tilge & Co.* v. *United States*, 3 Ct. Cust. Appls. 97, T. D. 32360; *Devoy* v. *United States*, 3 Ct. Cust. Appls. 444, T. D. 33034, and others of like import are controlling of the issues here; and that the articles in question were properly held by the court below to be dutiable as manufactures of leather.

In the case of *Kleinberger & Katz* v. *United States*, 12 Ct. Cust. Appls. 571, T. D. 40798, this court, after reviewing the legislative history of the provision in paragraph 1606 for leather "forms suitable for conversion into manufactured articles," and after giving extensive consideration to judicial constructions of similar provisions in prior tariff acts, said:

From these authorities we think it may safely be adduced that the phrase "leather cut into * * * other forms suitable for conversion into manufactured articles" means leather which has been cut into forms suitable for conversion into manufactured articles *and which leather has not been further advanced or processed and which forms, in themselves, do not constitute manufactures of leather.* (Italics ours.)

Again in the case of *United States* v. *State Forwarding & Shipping Co.*, 14 Ct. Cust. Appls. 153, T. D. 41690, this court, in an opinion by Graham, Presiding Judge, said:

Since the first appearance in our tariff laws of a provision for leather cut into forms suitable for conversion into manufactured articles (par. 457, Tariff Act of October 1, 1890), the courts have recognized the congressional intent to segregate, for duty purposes, leather which has been processed to the point where it has become a manufacture of leather, and leather which has been merely cut into forms. The line of demarcation has been indicated in various cases in this court, to which we now refer.

The language of the foregoing quotations and the principles of law therein set forth distinguishing between manufactures of leather

and "leather forms" were approved and followed by this court in the case of *Ellison & Sons* v. *United States*, 15 Ct. Cust. Appls. 210, T. D. 42238. Accordingly, leather forms which in themselves constitute manufactures of leather are not free of duty under paragraph 1606, but are dutiable as manufactures of leather under paragraph 1432.

The word "manufactures" is not always limited to the ultimate, final, completed article of or for which the one in question may be material. It includes materials which have been "subjected to successive processes of manufacture, each one of which is complete in itself, but several of which may be required to make the final product. * * * *the finished product of one manufacture* thus becoming the material of the next in rank." (Italics ours.) *Tide Water Oil Co.* v. *United States*, 171 U. S. 210; *Hartranft* v. *Wiegmann*, 121 U. S. 609; *Saltonstall* v. *Wiebusch*, 156 U. S. 601; *Worthington* v. *Robbins*, 139 U. S. 337; *United States* v. *Dudley*, 174 U. S. 670; *Fenton* v. *United States*, 1 Ct. Cust. Appls. 529, T. D. 31546. It includes articles which, because of the extent to which they have been processed, have "attained a distinctive name, character, or use, different from that originally possessed by the material or materials" from which they were made. *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963.

Another important, and in this case vital, principle of law was stated in the language quoted from the *Kleinberger & Katz* case. It was there said: "The phrase 'leather cut into * * * other forms suitable for conversion into manufactured articles' means leather which has been cut into forms suitable for conversion into manufactured articles *and which leather has not been further advanced or processed* * * *." (Italics ours.) This language accurately states the views of this court as to the construction to be placed upon the "leather forms" provision of paragraph 1606.

Leather cut into forms and then further advanced in condition by processing is not leather merely cut into forms, but is, in fact, something more. We think that the Congress intended to limit the provision to leather which has been cut into forms only, and which "leather forms" have not been further advanced or processed, and we so hold.

The merchandise under consideration was embossed and colored after it was cut into forms. It has been advanced in condition by the embossing and coloring processes, and for this reason, if for no other, it is not entitled to free entry as "leather cut into * * * other forms suitable for conversion into manufactured articles." This brings us to a consideration of the decision in the case of *United States* v. *State Forwarding & Shipping Co.*, *supra*, in which the court held

that small pieces of colored or dyed sheepskin leather were free of duty as "leather forms" under paragraph 1606. In the opinion the court said:

> * * * It is contended that the coloring or dyeing process which has been applied to these pieces of leather is sufficient to take them out of the class of leather cut into forms, as defined by the decisions. We are not, however, prepared to hold, on the record now before us, that such is the case. It nowhere appears whether this coloring occurred during the process of tanning or preparation of the leather, or whether it has occurred since. In any event the court is of opinion that such coloring or dyeing, alone, is not such a further processing of the leather in question as would take them out of the classification of the leather cut into forms.

At the time the opinion in the *State Forwarding & Shipping Co.* case was handed down the court was of unanimous opinion that a mere coloring or dyeing of leather was not a sufficient processing thereof to remove such leather from the designation of "leather cut into forms." On more mature consideration of the subject, however, we have concluded this position is not well taken, but that such processing, if done after the leather has been cut into forms, should be considered as such an advancement.

It follows from what has been said that the merchandise represented by Exhibit No. 1 and the official sample in protest No. 168842–G, and that which is represented by the larger exhibits in collective Exhibit No. 1 in protest No. 168378–G, is not entitled to free entry as "leather forms" under paragraph 1606 for two reasons; namely, first, because it consists of leather forms which in themselves constitute manufactures of leather; and, second, because it was advanced in condition by embossing and coloring processes after it was cut into forms. Being "manufactures" of leather it is dutiable as such under paragraph 1432.

The merchandise represented by the smaller exhibit in collective Exhibit No. 1 is not entitled to free entry as "leather forms" under paragraph 1606, because, after having been cut into "leather forms," it was further advanced by embossing and coloring processes. However, as the merchandise represented by this exhibit has not been dedicated to the manufacture of a particular kind or class of articles, but is used commercially for the manufacture of a variety of articles, it is not dutiable as "manufactures of leather." It consists of sheep leather, dressed and finished, and, in our opinion, is dutiable as such under paragraph 1431.

The judgment is modified, being affirmed as to the merchandise represented by Exhibit No. 1 and the official sample in protest No. 168842–G, and the larger exhibits in collective Exhibit No. 1 in protest No. 168378–G, and reversed as to the merchandise represented by the smaller exhibit in collective Exhibit No. 1. The

cause is remanded for proceedings consistent with the views herein expressed.

*Modified* and *remanded*.

SMITH, J.: I concur in the conclusion.

### CONCURRING OPINION

BLAND, Judge: I can concur, not only in the result arrived at by the decision of the majority, but in all of the language used, except such language as is used in connection with the modification of our holding in the *State Forwarding & Shipping Co.* case.

As I understand the decision of the majority, it holds that since the processing of Exhibit No. 1 (held not to be a manufacture of leather) was done after the cutting into form and not before such cutting, it is, for that reason, not leather cut to form, and that this is the only reason it is not leather cut to form.

The processing consisted of embossing and elaborately decorating the leather with various shades and colors, so as to dedicate it to a particular class or kind of article which is used for the manufacture of cigarette cases, cardcases, bill folds, pocketbooks or envelope purses, and other small "fancy leather goods" articles. I agree that this takes it out of the cut-to-form leather paragraph and that it still is not a manufacture of leather; but, according to my views, it would have the same status if the same processing of the leather had taken place prior to cutting, if the processing was done as a part of the advancement of the leather toward its ultimate dedicated use. When so processed it ceases to be the kind of leather which, when cut to form, was within the contemplation of the legislature in the enactment of paragraph 1606.

If the opinion of the court had indicated that the processing it has described, if done before cutting, would have the same effect that it has when done after cutting, I would heartily concur in both result and language. It seems to me the court's opinion, as it stands, is an invitation for the importer of leather specially processed for the making of a given article to refrain from cutting same until after importation. If the uncut leather is imported after having been elaborately processed and advanced toward making a given article or class of articles, it should not be classified under paragraph 1606 any more than if the special processing had been done after cutting. It might be suggested that the opinion of the court leaves this an open question. I wish this were true. The language used seems to make the test depend upon the time when the leather was cut. This is the natural inference to be drawn from the opinion, and I regard that as unfortunate.