UNITED STATES *v.* GENERAL DYESTUFF CORP. (No. 4326) [1]

[1] C. A. D. 170.

United States Court of Customs and Patent Appeals, May 5, 1941

*Charles D. Lawrence*, Special Assistant Attorney General (*Frank X. O'Donnell, Jr.* and *Richard F. Weeks*, special attorneys, of counsel), for the United States.
*Eugene R. Pickrell* (*Eugene A. Chase* of counsel) for appellee.

[Oral argument February 6, 1941, by Mr. Weeks and Mr. Chase]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, and JACKSON, Associate Judges [2]

BLAND, Judge, delivered the opinion of the court:

Appellee, General Dyestuff Corporation, imported on September 4, 1934, at the port of New York, merchandise invoiced as "IG-Wax (Mineral wax)," (called "I. G. WAX Z" in the protest) which was classified by the Collector of Customs under paragraph 1536 of the Tariff Act of 1930 as a manufacture of wax and assessed with duty at 20 per centum ad valorem.

Appellee in its protest claimed that the merchandise was entitled to entry free of duty "under the provisions for animal, vegetable, or mineral waxes, in Paragraph 1796" of said act. Alternative claim was made that the merchandise was dutiable as a nonenumerated article under paragraph 1558 of said act at 10 or 20 per centum ad valorem. By amendment to the protest, further claim was made that the merchandise was free of duty under paragraph 1733 of said act as "Oils, mineral: * * * paraffin, * * *, not specially provided for." This latter claim is not pressed in this court.

The parties to this suit entered into a stipulation regarding the manufacture of the involved merchandise, the pertinent part of which stipulation follows:

That I. G. WAX Z, the merchandise at bar, is produced from Montan Wax by the following process:

Montan Wax, which is obtained from lignite or brown coal, is bleached with chromic acid;

---

[2] LENROOT, Judge, did not participate in the consideration or decision of this case.

Bleached Montan Wax is then reduced with iron powder and hydrogenated with a nickel catalyst;

The resulting hydrocarbon is the merchandise at bar.

In Chambers' Technical Dictionary (1940) montan wax is defined as follows:

montan wax (*Chem.*) A bituminous wax extracted under high temperature and pressure from lignite. It is dark brown in colour, and can be bleached. M. p. 80°–90° C.; soluble in benzene, chloroform, carbon tetrachloride. It forms the basis for the metallic soaps which are used for making the original recordings in gramophone-disc manufacture.

The imported commodity has a white, crystalline appearance something like paraffin, is waxy in character, and, on account of its high melting point and other qualities, is used for the purpose of making wax polishes, as a substitute for paraffin in the manufacture of paper drinking cups for hot beverages, in preparing imitation food displays, for the wax coating of anodyzed aluminum plate, for coating and impregnating paper, and for insulating wire.

At the trial appellee adduced the testimony of four witnesses. The Government produced no witness. The testimony discloses the uses of the wax in the condition as imported and the opinions of various witnesses as to its quality and name. The record clearly shows that the imported merchandise has been processed, by the steps indicated above, from its ordinary condition as montan wax to a condition for highly specialized uses, for which uses it was not suitable in its original condition as montan wax. The record also shows that there are other mineral waxes having a crystalline appearance such as ceresin, ozokerite, and paraffin, which are in some respects similar to the imported merchandise, that is to say, they have a somewhat similar appearance and are suitable for some of the uses of the imported article. The oxygen in the montan wax has been removed by the reduction process and the nickel catalytic process has added hydrogen to it. The treatment also took out organic acids and saponifiable matter.

The trial court sustained the claim of appellee that the involved merchandise was entitled to free entry under paragraph 1733, *supra*, and it is from its judgment so holding that the Government has taken the instant appeal.

The Government here contends that the imported article has been manufactured to the point where it has acquired new uses and a new name and is therefore a manufacture of wax under paragraph 1536, Tariff Act of 1930, as classified by the collector, which paragraph reads as follows:

PAR. 1536. Candles, 27½ per centum ad valorem; manufactures of amber, bladders, or wax, or of which these substances or any of them is the component material of chief value, not specially provided for, 20 per centum ad valorem.

It makes an alternative contention that in event it be held that the merchandise is not a manufacture of wax under paragraph 1536,

it should be held dutiable as a nonenumerated manufactured article under paragraph 1558.

The importer urges that the trial court properly held that regardless of the manufacturing effort expended upon the material from the time it responded to the name of montan wax until it acquired the name of "I. G. Wax Z," it nevertheless remained wax and is properly described and classifiable under the free list provision 1796 which reads:

PAR. 1796. Wax: Animal, vegetable, or mineral, not specially provided for.

In appealing to this court the Government has, by its assignments of error, properly challenged the correctness of the trial court's finding that the goods were free of duty under paragraph 1796 and the refusal of the trial court to hold the merchandise dutiable under paragraph 1536, but there is no assignment of error in the record which challenges the action of the trial court in not holding the merchandise dutiable under paragraph 1558 as a nonenumerated manufactured article. The question is first raised in this court in the Government's brief. Under such circumstances, the importer contends that this court is without authority to pass upon the question as to whether or not the involved merchandise is a nonenumerated, manufactured article.

We disagree with the Government that the instant material should be held dutiable as assessed as a manufacture of wax at 20 per centum ad valorem. It is still a material, though a manufactured one, which has passed from its state as montan wax, in which state it would be classifiable under the free list provision for mineral wax, into such a different material as to no longer, in our judgment, respond to the term "mineral wax" found in said paragraph. While it is waxy in character, it is a material, and, as its name and use indicates, it is a wax which has been so processed and manufactured that its original nature and wax characteristics have been greatly altered and changed. The wax at bar has been bleached. It has been reduced with iron powder and has been run over a nickel catalyst, in which processes the oxygen has been removed and hydrogen added. These processes have transformed it into a new material with new uses for which the original material, montan wax, was not suitable.

Irrespective of the merits of the contention of the Government that the imported merchandise by manufacturing processes has acquired a new name, and irrespective of any tariff significance to be given to this consideration under the circumstances at bar, it may be noted that the imported merchandise was originally montan wax, and although it has been highly processed it is still called wax and referred to as "I. G. Wax Z." Whether this is merely a trade name of a particular kind of wax, does not definitely appear from the record. Merely adding a trade prefix to the word "wax" could hardly be said to be changing the name of the commodity from "wax" to some other name in a tariff sense.

In our judgment, however, the instant material is still a material which may be used for making manufactures of wax responding to the language of the dutiable provision, paragraph 1536. It is rarely difficult to determine when a thing has had applied thereto a manufacturing effort, but difficulty is often encountered in determining where the narrow border line rests between *a thing manufactured and the manufacture of a thing*.

This case suggests a very narrow issue, the decision of which, however, may rest upon what we regard as very pertinent authority. In some of the cases, not necessary to cite, the terms "manufactures of a thing" and "a thing manufactured" have been interchangeably used. In other decisions, in situations much like the present one, the courts have distinguished between a thing which has been manufactured only to a certain point and a thing which has been manufactured to the point where it has become the manufacture of a material, to wit, a wholly new article with a new name and use. Running through all the decisions is the general fundamental principle that before an article of imported merchandise may be regarded as the *manufacture of* a material, it must have been so far processed from its original condition as to have acquired new characteristics and thereby become a new article with a new name and new use.

The case of *Tidewater Oil Co.* v. *United States*, 171 U. S. 211, has been quoted here extensively in the Government's brief. This case has many times been discussed by this court. There the question to be determined was whether certain boxes had been "*wholly manufactured* in the United States" [italics ours] from imported shooks. The question at bar, relative to paragraph 1558, is whether or not the wax, prior to importation, had been "manufactured, in whole or *in part.*" [Italics ours.] Moreover, the distinction to be made between a completed manufactured article like a box made from shooks and an original material which by manufacturing effort had been changed as has the article at bar, was not before the court in that case, but a portion of the reasoning of the case seems apropos here. The court said:

* * * It is not always easy to determine the difference between a complete and a partial manufacture, but we may say generally that an article which can only be used for a particular purpose, in which the process of manufacture stops short of the completed article, can only be said to be partially manufactured within the meaning of this section; * * *

We think that the decision of this court in *United States* v. *Wilkinson Process Rubber Sales Corp.*, 22 C. C. P. A. (Customs) 60, T. D. 47051, is helpful in deciding the issue at bar. In that case, merchandise known as "linatex" consisting of thin rubber in rolls was held dutiable as a nonenumerated manufactured article, rather than as a manufacture of india rubber, under one provision, or free as crude rubber under another. It was obvious that the rubber was not

crude. The first question presented was whether or not the merchandise had been so processed as to be a nonenumerated manufacture of india rubber under the dutiable provision in paragraph 1558. The court held that the Government was wrong in its contention that since the crude rubber had had manufacturing efforts expended upon it in the way of treatment, under a new patent process which gave it the characteristics of vulcanized rubber, it responded to the term "manufactures of india rubber." It also held that it was not crude rubber.

In the last above-cited case, the Government, in urging that the importation was a manufacture of india rubber, made substantially the same contention it makes here in urging that the imported I. G. wax is a manufacture of wax. The factual circumstances of that case and those of the case at bar are quite analogous. We quote therefrom as follows:

As this and other courts have frequently said, it is not always easy to determine, as a matter of law, when a thing is the manufacture of another thing. The difficulty of such a determination arises largely from the different expressions used by Congress in the various tariff acts. In tariff legislation Congress has frequently distinguished between the "manufacture of" an article and a thing which has been manufactured. Numerous examples, illustrative of this fact, could be given, but it is sufficient to call attention to a few of them. In the lumber schedule of the Tariff Act of 1930 and the lumber schedules of other tariff acts, provision was made for "manufactures of wood," and in the same schedules certain wood or lumber products are provided for when *manufactured* in a certain way or to a certain extent. In the same act, paragraph 1540 provides for sea grass "*if manufactured or dyed*" [italics ours], while in paragraph 1537 (a) "manufactures of * * * sea grass" are provided for.

This court on frequent occasions has been called upon to determine what constitutes the "manufacture of" an article. While the decisions may not seem entirely harmonious, in particulars which are of no concern here, this court has definitely adhered to a rule which, we think, is illustrated by the language used in *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963:

* * * While this meaning has been enlarged, yet there still remains the idea that to constitute a manufacture of a thing, or a thing manufactured, it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processsing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character, or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

It is the contention of the Government that the imported merchandise meets the requirements of the above-quoted pronouncement. In some respects, if the literal wording only of the above quotation were considered, there would appear to be some plausibility in the Government's contention. The difficulty with its position, however, is that it seeks to apply the above rule to the imported merchandise which is still a material and is suitable only to be used as a material for being manufactured into articles which themselves would be manufactures of rubber. The Government's contention makes no distinction between an advanced rubber material and a completely manufactured rubber article made from the rubber material.

All the above-quoted language seems to be squarely in point on the issues at bar. In this case as in that case, the Government would

make no distinction between an ornamental fruit made of the imported wax and the imported wax itself. Both, by it, would be regarded as manufactures of wax. In view of the context of the provisions and the facts shown by the instant record, it seems obvious that there should be a distinction made for tariff purposes if it can be made logically and soundly, between a material, wax, which has been manufactured into another kind of material for further manufacture, and a wax which has been manufactured into completed articles such as the record shows are produced from the imported material.

Other considerations confirm us in the view that the imported material is not wax of the character intended for the free list, or the kind of article which responds to the dutiable provision "manufactures of * * * wax" in paragraph 1536, *supra.* In the Summary of Tariff Information, 1929, compiled by the United States Tariff Commission for the use of the Committee on Ways and Means of the House of Representatives, volume 2, pp. 2636–2639, is a discussion of the description and uses of waxes and decisions relating thereto. We quote an excerpt therefrom:

DESCRIPTION AND USES.—Beeswax is described under paragraph 1438 which provides for white bleached beeswax. The crude beeswax enters under paragraph 1693. The waxes of this paragraph are substances which in physical properties resemble beeswax and are mixtures of compounds containing carbon, hydrogen, and oxygen. Vegetable waxes are obtained from the fruit, leaves, or stems of many plants, a small number only being of commercial value. The principal vegetable waxes are carnauba, candelilla, Japan wax, myrtle or bayberry, and Cochin China or cay-cay. Chinese or insect wax, though classed as vegetable, is really an animal wax. The mineral waxes, similar to paraffin (par. 1633), come from natural bituminous substances; the most important are ceresin and montan.

\* \* \* \* \* \* \*

Montan wax is obtained by extraction from certain lignites found in Saxony and Thuringia. The crude wax is brown in color, but by distillation with superheated steam may be obtained nearly white. It is also refined with sulphuric or nitric acid. It is used as a substitute for carnauba wax in polishes; in place of ceresin in insulating materials; for phonograph records; and, mixed with tar, for waterproofing roofs. Its property of raising the melting point of low melting point waxes is of importance and it is accordingly used as an addition to paraffin and other waxes to offset their low melting points. It is also used in the treating of paper instead of rosin and as a substitute for or in combination with creosote for wood preservation.

Under "DECISIONS" the following is said:

*Mineral wax* to which stearic acid had been added was held dutiable at 20 per cent as a nonenumerated manufactured article under paragraph 1459 rather than free as wax under paragraph 1693. (T. D. 41814.)

T. D. 41814, to which the attention of Congress was called, is the case of *L. S. Tainter* v. *United States,* 50 Treas. Dec. 331 and involved a mineral wax to which stearic acid had been added to make the original product suitable for special uses for making wax figures. It had

been classified by the collector as a nonenumerated manufactured article. In the protests it was claimed to be free of duty under the free list wax paragraph, which in every way was identical with the free list paragraph at bar. The United States Customs Court approved the classification and held the merchandise to be dutiable as a nonenumerated manufactured article upon the theory that regardless of its description it had been processed from its original condition for a specialized use and had been advanced in value by such process and was, therefore, no longer wax. This decision, as is above stated, was called to the attention of Congress. The situation is quite comparable to the one at bar and it is fair to assume that if Congress had not been satisfied with the administrative practice and the holding of the court as affecting the wax there involved, it would have done something about it. While this matter is not pointed out as constituting legislative approval of judicial determination, it is, we think, a circumstance worthy of note.

As having considerable bearing upon the issues involved in this case the following cases may be referred to: *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798; *A. H. Ringk & Co. et al.* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769.

It therefore appears to us upon the instant record that the merchandise is not dutiable as a manufacture of wax under paragraph 1536, nor is it free of duty, as held by the trial court, under paragraph 1796 but is a nonenumerated manufactured article dutiable at 20 per centum. Since, however, the Government has not assigned error against the court's failing to find the merchandise dutiable as a nonenumerated manufactured article, and being of the opinion that the classification and holding of the trial court was erroneous, we are unable to do more than to *reverse* the judgment of the trial court without approving the classification of the merchandise by the collector or further directing its proper classification.