UNITED STATES *v.* GEO. S. BUSH & Co. (No. 4344)[1]

United States Court of Customs and Patent Appeals, March 23, 1942

*Paul P. Rao,* Assistant Attorney General (*Charles D. Lawrence,* Special Assistant to the Attorney General, and *Joseph E. Weil,* special attorney, of counsel), for the United States.

*Lawrence & Tuttle* (*Geo. R. Tuttle* of counsel) for appellee.

[Oral argument February 3, 1942, by Mr. Lawrence and Mr. George R. Tuttle]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The merchandise involved in this appeal is invoiced as "single silk fishing line" and is referred to throughout the record as "artificial fishing gut" or "silk gut" and is made by coating silk threads or strands with a composition of formalin and gelatin. The merchandise was imported in 1928 in lengths of from 10 to 100 yards and in strengths of from ½-pound test to 150-pound test. As imported it is not dyed.

In this country most of it is dyed. Approximately 2 per centum of the same is sold undyed. After importation it is used either as fishing lines or as material for making fishing leaders, the leader use· predominating. In this country, some of the imported "silk gut" is dyed, cut into shorter lengths (from 3 to 6 feet) and loops are tied into it.

At the trial of the instant case the importer introduced the testimony of seven witnesses and the Government that of one. In addition to the foregoing, importer offered in evidence the records in three other cases involving the same character of merchandise, and they were made part of the instant record, to wit: *Takeuchi Bros. et al.* v. *United States*, 20 C.'C. P. A. (Customs) 427, T. D. 46367; *Okuda & Shibagaki (Inc.) et al.* v. *United States*, 21 C. C. P. A. (Customs) 100, T. D. 46411; *American Import Co.* v. *United States*, 26 C. C. P. A. (Customs) 72, T. D. 49612.

The appeal in the first case above referred to was dismissed in this court and the judgments of the lower court in the other two cases were affirmed. Anything in those cases pertinent to the issue involved here will be referred to later herein.

The collector at the port of Seattle classified the merchandise as silk fishing lines under paragraph· 1211, Tariff Act of 1922, and· assessed duty thereon at' 60 per centum ad valorem. Said paragraph 1211 reads as follows:·

PAR. 1211. All manufactures of silk, or of which silk is the component material of chief value, not specially provided for, 60 per centum ad valorem.

The importer protested the said classification and claimed the merchandise to be dutiable at various rates under paragraph 1204 of said act, the chief claim being that the merchandise should have been classified and assessed with the proper rate of duty under that part of paragraph 1204 as "and silk threads or yarns of any description, made from raw silk, not specially provided for * * * if ungummed, wholly or in part, or if further advanced by any process of manufacture * * *." The paragraph in full reads as follows:

PAR. 1204. Sewing silk, twist, floss, and silk threads or yarns of any description, made from raw silk, not specially provided for, if in the gum $1 per pound, but not less than 35 per centum ad valorem; if ungummed, wholly or in part, or if further advanced by any process of manufacture, $1.50 per pound, but not less than 40 per centum ad valorem. In no case shall the duty be assessed on a less number of yards than is marked on the goods as imported.

It also was claimed in the protest that the merchandise was dutiable as a nonenumerated manufactured article at 20 per centum ad valorem under paragraph 1459 of said act. Appellee also has here called attention to paragraph 1212 of said act which it regards as of importance in the consideration of the instant issue. Paragraph 1212, in part, reads:

PAR. 1212. In ascertaining the weight or number of silk under the provisions of this schedule, either in the threads, yarns, or fabrics, the weight or number

shall be taken in the condition in which found in the goods, without deduction therefrom for any dye, coloring matter, or moisture, or other foreign substance or material. * * *

The United States Customs Court, Second Division, sustained the protest and held that the merchandise, which had been assessed as aforesaid at 60 per centum ad valorem under paragraph 1211, was properly dutiable at $1.50 per pound but not less than 40 per centum ad valorem under said paragraph 1204 as "silk threads or yarns of any description, made from raw silk [etc.]"

The Government appealed here from the judgment of the trial court.

The appraiser's answer to the protest states that the lines are made of silk. It is here conceded that the merchandise is composed in chief value of silk.

The trial court stated that paragraph 1211 was a catch-all provision for all manufactures of silk, not specially provided for, and, without deciding that the merchandise was described in said paragraph 1211, held that even if it was so described, it was more specifically described in paragraph 1204 as "silk threads or yarns of any description, made from raw silk [etc.]"

In this court, the Government, as appellant, contends that the imported merchandise is more than silk threads or yarns made from raw silk and is a manufacture of silk or of which silk is the component material of chief value. It points out that in the case of *Okuda & Shibagaki (Inc.) et al.* v. *United States, supra,* our decision in affirming the trial court in holding merchandise comparable to that at bar (there coated with a cellulose substance, here coated with formalin and gelatin), as being a manufacture of silk, was based primarily upon the failure of proof to show that the merchandise was silk threads or yarns of any description advanced, and urges that if the importer failed to prove this fact in that case, the appellee has also failed to prove the same fact in the instant case. The Government argues, in substance, that Congress, in the enactment of that portion of said paragraph 1204 with which we are concerned, contemplated including therein only such articles as sewing silk, twist, floss, and silk threads or yarns made from raw silk, if ungummed or further advanced by any process of manufacture which still had the identity, characteristics, appearance, use, and name of the named articles.

It argues that the instant merchandise has none of the original characteristics of silk threads or yarns; that it has passed from the state of threads or yarns, and further states:

* * * Clearly, the words "if further advanced by any process of manufacture" modify the nouns, threads or yarns, in that paragraph, and if the merchandise is no longer a thread or yarn it is of little consequence whether they are advanced or not.

The Government then points out that under the undisputed testimony the merchandise is exclusively used as fishing lines or as material for fishing leaders (except a fugitive use in tennis rackets); that its appearance is not that of a thread or yarn, and that the article is known as silk fishing lines, silk gut, or as material for fishing leaders.

The importer argues that the record fully shows that the merchandise is "material" for making leaders and lines and it is not, in its undyed imported condition, a completed article, such as is covered by paragraph 1211, citing *Konishi Kotakudo Co. (Inc.)* v. *United States*, 17 C. C. P. A. (Customs) 355, T. D. 43798, which dealt with the so-called "single-use" doctrine relating to the manufacture of an article. It argues in substance that the involved merchandise is silk yarn, ungummed wholly or in part, and that it is such silk yarn advanced by a process of manufacture and is a yarn, therefore, "of any description" and that paragraph 1212, relating to the dutiable weight or number of threads or yarns, should be considered in connection with the present issue because there it is prescribed that said weight and number shall be taken in the condition in which found in the goods without deduction for any dye, coloring matter or moisture *or other foreign substance or material*. It therefore contends that the foreign substance or material in the instant merchandise, to wit, formalin and gelatin, should be ignored.

It is further urged that the term "silk threads or yarns of any description" found in paragraph 1204 "is not limited to such as may be intended for weaving," and the case of *Kny-Scheerer Co.* v. *United States*, T. D. 26067, 9 Treas. Dec. 266, relating to surgeons' silk wound upon spools or cards and held dutiable as "silk threads * * * of every description" is cited. Appellee contends that since that decision was written, the law has been much broadened by including in the paragraph under consideration the phrase "further advanced by any process of manufacture." It argues that the advancement by a process of manufacture was an improvement in its condition "by which the original material is made more suitable for its ultimate use."

From the foregoing, it is observed that appellee's main claim is that the goods are dutiable under paragraph 1204 as "silk threads or yarns of any description * * * if * * * advanced, etc." It also claimed alternatively that the goods were dutiable under paragraph 1459 as a nonenumerated manufactured article.

In view of our conclusion, we think it is necessary for us to pass upon only two of the issues presented—first, did the trial court err in sustaining appellee's claim under paragraph 1204 that the merchandise was dutiable as silk threads or yarns of any description, if advanced, etc.; second, for reasons hereinafter stated, was the assessment of the collector under paragraph 1211 as a manufacture of silk or of which silk is the component material of chief value, proper.

In deciding the issue presented under appellee's claim that the merchandise is dutiable under paragraph 1204 as "silk threads or yarns," it seems to us that there are two things to take into consideration: First, before coating the silk strands with formalin and gelatin, were they silk threads or yarns of any description within the purview of paragraph 1204. In view of the testimony of record and the exhibits offered showing the different steps taken in the preparation of the threads before coating took place, it may well be doubted as to whether or not the strands at any time were such threads and yarns as Congress had in mind when it enacted the first provision of paragraph 1204. We find it unnecessary to pass definitely upon this question for the reason that we are of the opinion that, regardless of their original status, they are no longer threads or yarns of any description made from raw silk which have only been "advanced by any process of manufacture" contemplated by the framers of the paragraph.

We are of the opinion that the alleged silk threads or yarns have been advanced by a process of manufacture beyond any stage of advancement where they still remain silk yarns or threads of any description. They have ceased to be threads and yarns and have become something more. They are finished articles dedicated to a new class of uses. We think Congress in enacting paragraph 1204 intended, notwithstanding its use of the term "any process of manufacture," to include therein only those articles named which had not been advanced by any process of manufacture to a point where their ordinary use and name had been changed. No one would think of calling the leader material and fishing lines at bar threads or yarns, regardless of whatever name might have been applied to them before they had been advanced into their finished condition. A study of the context of paragraph 1204 discloses that a duty of not less than 35 per centum was imposed upon the articles named, including silk threads and yarns if they were in the gum, but if they were ungummed wholly or in part "or if further advanced by any process of manufacture" they took the rate of not less than 40 per centum ad valorem. Ungumming was an advancement which raised them from a duty of not less than 35 per centum to a duty of not less than 40 per centum. Ungumming is an illustration of an advancement which was in the mind of Congress. Is it conceivable that it contemplated that any of the articles named in the paragraph might be so advanced by any process, such as the coating as in the instant case, which produced a new and wholly different article in character and use, and still remain in the paragraph for duty purposes? We think not.

Insofar as it was the burden of appellee, when it appealed from the decision of the collector to the United States Customs Court to not only prove that the collector was wrong, but that one of its

claims was meritorious, it might be suggested that it is unnecessary for us to pass upon the question as to whether or not the merchandise was properly assessed by the collector under paragraph 1211. Appellee took no cross-appeal from the holding of the trial court that the merchandise was dutiable at 40 per centum, and under such circumstances could not here obtain a more favorable judgment, to wit, 20 per centum as a nonenumerated manufactured article. See *United States* v. *F. W. Myers & Co., Inc.*, 29 C. C. P. A. (Customs) 30, C. A. D. 168. Ordinarily under such circumstances, we would reverse the judgment of the trial court without approving or disapproving the classification of the collector. In the present instance, however, we feel called upon to pass upon the issue as to whether or not the merchandise is properly dutiable as assessed by the collector for the reasons, first, that we think it has a direct bearing on the construction to be given to paragraph 1204, and second, that there have been a number of attempts to present this issue to this court but in each instance unfortunately, because of the manner in which the case was presented or decided, it was not necessary to pass upon this question, and we think it entirely proper under the circumstances, to decide this issue at this time. Useless litigation should be discouraged. See *United States* v. *Didier-March Co.*, 2 Ct. Cust. Appls. 436, T. D. 32198.

So, for the foregoing reasons, we proceed to determine the second issue.

Unquestionably, under a long line of authorities, the imported merchandise at bar is a manufacture of silk or of which silk is the component material of chief value. The article begins in its process of manufacture with raw silk. From that it passed into so-called threads or yarns. These yarns and threads were by subsequent manufacturing processes, to wit, coating with formalin and gelatin, made into an article dedicated to a class of uses, to wit, certain definite kinds of fishing articles—lines and leaders. They had passed from the state of threads to articles that were known as silk fishing lines or silk gut for making fishing leaders, both of which articles, when finished, belonged to the same class, having for the most part the same essential characteristics.

In *Ishimitsu* v. *United States*, 11 Ct. Cust. Appls. 186, T. D. 38963, this court in an opinion by Judge Barber stated:

* * * While this meaning has been enlarged, yet, there still remains the idea that to constitute a manufacture of a thing * * * it must appear that something has been produced so changed or advanced in condition from what it was before being subjected to the processing or treatment that whether of only one material or of more than one, it has attained a distinctive name, character or use, different from that originally possessed by the material or materials before being subjected to the manufacturing process.

This rule as above quoted has been followed by this court for many years. In the following cases the doctrine that if a thing has

been advanced to a point where it was dedicated to a class of uses it had been sufficiently processed to fall within the phrase "a manufacture of" is laid down: *A. H. Ringk* v. *United States*, 16 Ct. Cust. Appls. 132, T. D. 42769; *United States* v. *Cohn & Rosenberger, Inc.*, 19 C. C. P. A. (Customs) 137, T. D. 45259; *American Import Co.* v. *United States*, 26 C. C. P. A. (Customs) 72, T. D. 49612.

That a thing may be the manufacture of another thing, although the new article may have more than one use (if of the same class), has been decided by this court in a number of cases which need not be discussed here, and has become the settled law on the question. It may be said in passing that the case of *Konishi Kotakudo Co. (Inc.)* v. *United States, supra*, relied upon by the importer, expressly states: "This exclusive use is not necessarily confined to any one article, but may cover 'a particular kind or class of articles,' " citing *A. H. Ringk* v. *United States, supra*.

In the instant case, if the coated silk threads, in the condition imported, should be found to have been only advanced by processes of manufacture so as to fit them for use as a material for further unrelated manufacturing efforts, they should be regarded as a material and not as manufactures of silk. (We are not speaking of *silk manufactured*. See *United States* v. *General Dyestuff Corp.*, 29 C. C. P. A. (Customs) 53, C. A. D. 170). This is supported by all the decisions with which we are familiar. It would be erroneous, however, to say that a thing ceases to be a manufacture of another thing merely because, when it has been completely manufactured, it has many uses. Cottonseed oil is a manufacture of cottonseed. Grain alcohol is a manufacture of grain. Cottonseed oil and alcohol have numerous uses. If, however, cottonseed oil or alcohol were only materials for various other manufacturing efforts in producing a number of unrelated articles, they, of course, would not be "manufactures of" cotton or grain.

The imported articles, however, have been advanced to a condition where they either serve as lines or go into the making of leaders. A leader is a short line attached to the main fishing line, and in most instances may be regarded as an extension of the line. It holds the hook or lures manipulated by the fisherman through the use of the line. A fishing line of gut or silk and a fishing leader of gut or silk are surely in the same class. Therefore, in the instant case, when the original material had reached the point of advancement where it was dedicated to a certain class of uses, it became a manufacture of silk.

Appellee's argument relating to the applicability of paragraph 1212, relating to ascertaining the number and weight of threads or yarns, is without merit in the decision of the issue here involved. There, no deduction is to be made in ascertaining the weight and number of silk yarns on account of foreign substances and materials. We are not here ascertaining the weight or the number of silk threads either in or

out of fabrics. We, in the determination of the instant issue, are considering the effect of the processing of so-called silk threads or yarns by finishing them into manufactured articles.

For the reasons aforesaid, we are of the opinion that the merchandise involved is described in paragraph 1211 and is properly dutiable thereunder.

The soundness of our holding that the involved merchandise is not dutiable under paragraph 1204, as claimed by the importer, is strengthened, we think, by a consideration of the context of paragraph 1204 in the light of the context of paragraph 1211. While it is a common thing in the instant and other tariff acts, especially in such schedules as relate to textiles and metals, to follow specific provisions with a catch-all clause for manufactures of certain of the materials named in the schedule, it is not without interest to note that in many instances Congress has made no such catch-all provision for the particular material involved, relying upon the general catch-all provision of paragraph 1459 for nonenumerated manufactured articles to take care of such materials as do not fall within the specific designation. In the instant case, paragraph 1204 calls for "Sewing silk, twist, floss, and silk threads or yarns of any description." Under the heading: "SEWING SILK, TWIST, FLOSS, ETC." in the Summary of Tariff Information, 1921, for the use of the Committee on Finance of the United States Senate in preparing the Tariff Act of 1922, the following language was used by the Tariff Commission at page 1015:

*Description and uses.*—Sewing silk is a thread made by winding and doubling silk, giving it a hard twist, and doubling and twisting again in reverse direction under a strong tension; it is used for hand sewing. Twist is a thread resembling sewing silk, but is three-ply instead of two-ply; it is used for both machine and hand sewing, principally the former. Embroidery silk consists of numerous slackly twisted singles, doubled, and slackly twisted together in the reverse direction. Floss silk is a variety of embroidery silk composed of a large number of singles slackly twisted together.

The information contained there corresponds with that found in Webster's New International Dictionary. For instance, "twist" is defined in the latter authority as:

twist. 1 * * * b A kind of closely twisted, strong sewing silk, used by tailors, saddlers, etc.

It seems obvious from the context of the provision as a whole that Congress in the enactment of paragraph 1204 was chiefly, if not wholly, concerned in therein providing for articles of the character used in sewing or in the making of fabrics, although it is not necessary to hold, and we do not hold, that the articles provided for therein would be removed from the paragraph by reason of the fact that they were eventually used for some other purpose. In our view of the case, it

is not necessary for us to so hold. Nevertheless, the character of the articles which Congress enumerated in the paragraph and the specific advancement named therein, we think, suggest that it did not intend to include merchandise like that at bar in paragraph 1204 but did intend that it fall within paragraph 1211 so as to be dutiable at a higher rate of duty than was provided for under paragraph 1204 or the nonenumerated paragraph 1459.

It might be stated here that regardless of the correctness of the conclusion reached by the Board of General Appraisers (now the United States Customs Court) in the said *Kny Scheerer* case, *supra,* the "surgeons' silk" involved there (according to the opinion) had been twisted but it had not been processed like the instant merchandise. Whether a twisted thread used by surgeons in sewing up wounds or incisions would fall within the instant paragraph 1204 we think is beside the point in determining the instant issue.

It would result in an anomaly, which should be avoided if possible, to hold that loosely joined strands of individual silk fibers, such as floss, which may be further processed into numerous different kinds of finished products should bear the same rate of duty as the highly processed finished merchandise before us.

It follows from the foregoing that the judgment of the United States Customs Court should be and it is *reversed.*